NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

File Name: 06a0232n.06

Filed: March 31, 2006

No. 05-3653

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| AMY S. et al., | ) | |
| | ) | |
| **Plaintiffs-Appellants,** | ) | **ON APPEAL** FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE NORTHERN |
| | ) | DISTRICT OF OHIO |
| DANBURY LOCAL SCHOOL | ) | |
| DISTRICT et al., | ) | |
| | ) | **O P I N I O N** |
| **Defendants-Appellees.** | ) | |
| | ) | |

Before: KENNEDY, MOORE, and SUTTON, Circuit Judges.

KAREN NELSON MOORE, Circuit Judge. Plaintiffs-Appellants Amy S. ("Amy") and

Mr. and Mrs. S.[1] appeal from the district court's grant of summary judgment to the Defendants-

Appellees ("Defendants")[2] in an action based upon various disputes regarding Amy's education.

Amy is disabled, and she attended Danbury Elementary School ("Danbury") for two years on a part-

time basis. Mr. and Mrs. S. argue that the school district failed properly to accommodate Amy's

needs, as required by the Individuals with Disabilities Education Act ("IDEA"), and they claim that

---

[1]We use pseudonyms for the plaintiffs to protect the privacy of the minor child. *McQueen v. Beecher Cmty. Schs.*, 433 F.3d 460, 461 nn.1, 3 (6th Cir. 2006).

[2]The Defendants in this case include the Danbury Local School District, Danbury Board of Education, Halley Leffler, Martin Fanning, Charles Scott (President of Danbury Local School Board), individual members of the Danbury Local School Board, Val Kosa, Barbara Mowry, the Erie-Huron-Ottawa Educational Service Center ("EHOESC"), and individual members of the EHOESC.

they are entitled to relief pursuant to the IDEA as well as other federal statutes and state laws. The

Defendants assert that the plaintiffs' claims are without merit because Mr. and Mrs. S. signed a

mediation agreement settling all issues regarding Amy's education. For the reasons discussed

below, we **AFFIRM** the district court's judgment in favor of the Defendants.

## I. BACKGROUND

Amy S. — who was twelve years old at the time that this lawsuit was filed — has Asperger's

Syndrome, an autistic spectrum disorder. She lives with Mr. and Mrs. S. ("Parents"), her

grandparents and legal guardians.[3] Beginning in preschool, Amy intermittently attended school, was

home-schooled, or spent time resting, depending on her emotional state. In January 2001, the

Parents felt that Amy was ready to go back to school after a period at home, and they met with

Halley Leffler ("Leffler"), the principal of Danbury, to discuss Amy's enrollment. The Parents and

Danbury administrators reached an agreement that Amy would attend Danbury on a part-time basis

during the 2001-2002 school year.

Shortly after Amy began school, an Individualized Education Program ("IEP")[4] meeting was

held to discuss her educational needs. Amy's teacher Val Kosa ("Kosa") employed a reward system

as a means to regulate Amy's behavior; the Parents and Kosa were pleased with Amy's progress

---

[3]Although Mr. and Mrs. S. are Amy's grandparents, we refer to them as Parents because they acted in a parental role throughout the relevant time period.

[4]The IEP is the "primary vehicle" for implementing the goals of the IDEA. *Honig v. Doe*, 484 U.S. 305, 311 (1988). The Supreme Court described the IEP as follows:
> Prepared at meetings between a representative of the local school district, the child's teacher, the parents or guardians, and, whenever appropriate, the disabled child, the IEP sets out the child's present educational performance, establishes annual and short-term objectives for improvements in that performance, and describes the specially designed instruction and services that will enable the child to meet those objectives.

*Id*.; *see also* 20 U.S.C. § 1401(14) (defining IEPs).

2

during that year. In March 2002, the Parents requested that the school provide Extended School Year services ("ESY") for Amy over the summer. After this request was denied, the Parents filed a request for a due process hearing. The Parents and Danbury agreed to mediate, and they signed a written settlement agreement on May 23, 2002. The agreement provided that the school would provide Amy one-and-a-half hours of tutoring per week for eight weeks over the summer.[5] The Parents agreed that "by signing this agreement all issues relating to [Amy's] education are resolved up to the date of this agreement." J.A. at 40 (First Mediation Agreement ¶ 4).

The complaint alleges that there was an incident during the 2001-2002 school year during which Danbury employees told other students that Amy was disabled. The incident involved comments made by Leffler that were allegedly directed at Kosa, but were perceived by at least one student to be directed at Amy.[6] Fanning investigated the incident at the Parents' behest, and he wrote a letter stating, "I do see how the student interpreted the comment and we must be careful as a school district not to make comments that may be misinterpreted in delicate situations." J.A. at 448 (Letter from Fanning to the Parents dated Feb. 27, 2002).

Kosa had health problems over the summer, and she was thus unable to tutor Amy. Approximately one month prior to the start of the next school year, Danbury School Superintendent Martin Fanning ("Fanning") hired Heather Incorvaia ("Incorvaia") to tutor Amy. Incorvaia offered to meet with Amy twice a week, to ensure that Amy received eight sessions, but the Parents wanted

---

[5]In addition, Danbury agreed to allow Amy use of the swimming pool during the summer and to pay Ron Nisch's (the Parents' attorney) fees.

[6]Leffler states that she saw Kosa sitting with students at lunch, and Leffler said "'Oh, do we have a new student here? You look kind of old to be in the 5th grade. You must have been held back two times.'" J.A. at 241 (Leffler Dep.). Amy's brother informed Mrs. S. that a fellow student had heard that "[Amy] had flunked a few times and had problems." J.A. at 317 (Mrs. S. Dep. at 267).

Amy to meet Incorvaia only once a week so that Amy would not be worn out before school. Amy and Incorvaia met twice, but on their third meeting, Amy would not cooperate and hid under a table; at that point, Mrs. S. came to pick up Amy. The Parents did not bring Amy back for further tutoring even though Incorvaia told them that she was available.

In the fall of 2002, Amy began sixth grade, again with Kosa as her teacher. Kosa began using a "ticket system" with Amy; if Amy received three "tickets," then she was sent home. Kosa stated that Amy was sent home only on one occasion between September 30, 2002 and December 9, 2002. After representatives of the Northwest Ohio Special Education Regional Resource Center ("SERCC") observed Amy at school, they recommended that Danbury implement a full "sensory diet" for Amy. When Mrs. S. noticed that Amy's behavior was getting worse, she arranged for a neurophysical evaluation of Amy by Dr. Patsy Suter ("Suter"). Upon Suter's advice, the Parents stopped sending Amy to school in December because they were concerned about Amy's deteriorating emotional state.

The complaint states that "[d]uring the 2002-2003 school year, Defendants failed to provide [Amy] with an opportunity to participate in extracurricular activities equal with that of non-disabled students." J.A. at 22 (Compl. ¶ 26). The Parents explain that Amy was not invited to the annual school field trip to Mohican State Park as well as to other school activities. Leffler responded to this allegation by stating that the notification about the trip was put in a different teacher's box, and that teacher never passed the notification along to Kosa.

The Parents attended a meeting with Danbury, SERCC representatives, and Erie-Huron-Ottawa Educational Service Center ("EHOESC") representatives in February 2003. The SERCC representatives suggested that Amy return to school for a seven-day observation period, which she did on February 18, 2003. During the observation period, "[Amy] was sent home from school a

4

minimum of two times." J.A. at 24 (Compl. ¶ 32). The Parents attended another meeting on March 8, 2003, but the parties did not reach any agreement regarding Amy's education. The Parents requested another due process hearing at this time. The SERCC representatives met with the relevant Danbury parties on April 8, 2003; the Parents claim that Leffler instructed them not to attend this meeting. The parties agreed to another mediation, and they signed a settlement agreement in May 2003. The agreement provided for 36 hours of tutoring, amongst other things, and it stated that "[t]he parties agree that this Agreement shall be effective . . . and resolves all educational issues heretofore." J.A. at 42 (Second Mediation Agreement ¶ 10).

During the summer of 2003, Theo Dunham ("Dunham") was hired by Danbury to tutor Amy. Dunham took Amy on various outings, and he stated that they had a good relationship. After they had spent some time together, Dunham was informed that he did not have the proper certification to transport Amy in his car; Dunham then told the Parents that they would have to drive Amy to meet him if they were to continue going on outings. Mrs. S. stated that "Dunham told me that Defendant Leffler would call me to inform me of the transportation problem and to suggest alternative tutoring over the summer. I never heard from Defendant Leffler that summer." J.A. at 392 (Mrs. S. Aff. at 3, ¶ 8). The Parents did not contact Dunham to set up further tutoring.

The Parents filed a complaint in the United States District Court for the Northern District of Ohio in February 2004 against the Defendants.[7] The Defendants filed a motion for judgment on the pleadings in April 2004. The district court dismissed with prejudice several of the claims against

---

[7]The complaint included the following claims: breach of contract, violations of the Education for the Handicapped Act ("EHA") (now IDEA), hostile learning environment under the Americans with Disabilities Act ("ADA"), discrimination on the basis of disability in non-academic programs and activities, negligent misrepresentation, intentional misrepresentation, civil rights violations, emotional distress, educational malpractice, educational neglect, breach of fiduciary duty and implied duty of good faith, loss of consortium, and negligence.

various Defendants.[8]  On February 18, 2005, the Defendants filed a motion for summary judgment, which was granted on April 28, 2005.  The Parents timely appealed.[9]

## II.  ANALYSIS

### A.  Standard of Review

We review de novo a district court's grant of summary judgment.  *Wolfe v. Perry*, 412 F.3d 707, 717 (6th Cir. 2005).

### B.  The Mediation Agreements

We agree with the district court's conclusion that the mediation agreements signed by the Parents preclude review of their claims.  *See Nicklin v. Henderson*, 352 F.3d 1077, 1079 (6th Cir. 2003) (holding that a settlement agreement signed by the plaintiff barred the plaintiff's subsequent discrimination claim), *cert. denied*, 541 U.S. 1031 (2004); *Jennings v. Metro. Gov't of Nashville*, 715 F.2d 1111, 1114 (6th Cir. 1983) (holding that the settlement resolved all claims and precluded a subsequent award).  The Parents — who were represented by counsel when they signed both mediation agreements — do not claim that they entered into the agreement against their will or without knowledge of the issues involved in the settlement.  Both of the agreements unambiguously

---

[8]The district court ruled in favor of the Defendants as to the following counts:
(a) Count one (breach of contract) is dismissed with prejudice as to Defendant Danbury Board of Education; (b) count five (negligent misrepresentation) is dismissed with prejudice as to all Defendants; (c) count six (intentional misrepresentation) is dismissed with prejudice as to Defendants Danbury Board of Education, Danbury Local School District, and Erie-Huron-Ottawa Educational Service Center; and (d) counts nine (educational malpractice), ten (educational neglect), eleven (breach of fiduciary duty), and thirteen (negligence) are dismissed with prejudice as to all Defendants.
J.A. at 121 (Op. and Mem. at 21, Nov. 1, 2004).

[9]The Parents appealed from the district court's grant of summary judgment for the Defendants on the following claims:  breach of contract, civil rights violations, intentional infliction of emotional distress, IDEA violations, ADA violations, and loss of consortium.

state that they resolve all issues regarding Amy's education, and the agreements thus apply to all of the claims that are based upon incidents or disputes related to Amy's experience at Danbury as of the date of the last agreement.[10]

The Parents also assert that the mediation agreements should not preclude their claims because the Defendants breached the agreements. We will only discuss the second agreement, because even if the first agreement was breached, any claims arising from that breach were resolved by the second agreement. The dispute regarding the second agreement is related to the amount of tutoring that Amy was entitled to receive during the summer of 2003. Dunham did provide some of the tutoring sessions, but he stopped working with Amy when he was informed by Leffler that he could no longer transport Amy in his vehicle. Dunham stated in an affidavit that he offered to continue tutoring Amy, either at the Parents' business or at any other location if they were willing to drive her to meet him. Dunham informed the Parents that "[his] schedule was flexible." J.A. at 192 (Dunham Aff. at 1, ¶ 6). Mrs. S. explained that Dunham told her about the transportation issue and suggested that she bring Amy to his home, but she declined to do so. J.A. at 392 (Mrs. S. Aff. at 3, ¶ 6). Mrs. S. also stated that "[d]uring this conversation, Dunham told me that Defendant Leffler would call me to inform me of the transportation problem and to suggest alternative tutoring over the summer. I never heard from Defendant Leffler that summer." *Id*. The Parents argue that this last statement supports their contention that Defendants breached the second mediation agreement. Because the Parents do not dispute that Dunham was still available, their argument must

---

[10]The Parents' counsel stated at oral argument before this court that the Plaintiffs have no claims based on facts occurring after the second mediation agreement except for their argument that the Defendants breached the second agreement, discussed *infra*.

fail.  Even if Leffler did not herself call to suggest alternative tutoring, there was a tutor available for Amy.

As all of the Parents' claims in this lawsuit are related to Amy's education, these claims are covered by the unambiguous language of the mediation agreements.  Because the Defendants did not breach the mediation agreements, the Parents' claims are barred by the fact that they were settled.

### III.  CONCLUSION

For the reasons discussed above, we **AFFIRM** the district court's judgment in favor of the Defendants.