# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

November 23, 2020

Lyle W. Cayce
Clerk

No. 19-11115

T. B., *by and through his next friend and mother* Jenny Bell,

*Plaintiff—Appellant*,

*versus*

Northwest Independent School District; Kenneth Burt; Laura Adams,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:18-CV-984

Before Jones, Elrod, and Higginson, *Circuit Judges*.

Jennifer Walker Elrod, *Circuit Judge*:

T.B. appeals the district court's dismissal of his discrimination claims under the Americans with Disabilities Act and the Rehabilitation Act. Because T.B. failed to exhaust his administrative remedies, we AFFIRM the district court's judgment dismissing the case without prejudice.

I.

Northwest Independent School District ("the District") is a school district in North Texas that lies in Denton, Tarrant, and Wise counties. T.B. is a student in the District diagnosed with Autism Spectrum Disorder and Attention Deficit

No. 19-11115

Hyperactivity Disorder.  As a result of these conditions, T.B. sometimes exhibited significant behavioral issues that required him to be removed from class or otherwise restrained.

This case arises out of an incident on April 4, 2017 that began with then-10-year-old T.B. calling his mother to come pick him up from school.  At some point, T.B.'s teacher got on the call and told T.B.'s mother that she was "losing patience" with T.B.  Soon thereafter, T.B. climbed on a table in an effort to avoid his teacher who then allegedly "knocked him to the ground, dragged him through two classrooms, and climbed on top of him" before kicking him in the chest when he began to run around the room.  Over a year after learning of this incident, T.B.'s mother filed a request for a special education due process hearing that was dismissed because it was not made within the applicable statute of limitations.  *See* 19 Tex. Admin. Code § 89.1151(c) (prescribing a 1-year statute of limitations).

T.B. appealed that decision and filed a complaint asserting claims against the District, his teacher, and a school paraprofessional on the exact same day.[1]  In his complaint, T.B. asserted that the District "failed to provide T.B. a safe and non-hostile educational environment."  As a result of the District's conduct, T.B. claimed to have suffered the "[l]oss of equal educational opportunities as those afforded non-disabled students."

The District moved to dismiss under Rule 12(b)(1).  Specifically, the District argued that T.B.'s complaint failed to properly exhaust his administrative remedies under the Individuals with Disabilities Education Act ("IDEA") and, thus, the court lacked subject matter jurisdiction.

In response, T.B. filed an amended complaint that was essentially the same as the original except that it dropped the claims against the paraprofessional.  The District again moved to dismiss on the same grounds as before.  T.B.'s response did

---

[1] The Northern District of Texas has since affirmed the due process hearing dismissal. *See T.B. v. Nw. Indep. Sch. Dist.*, No. 4:18-CV-00985-BJ (N.D. Tex. June 2, 2020).

No. 19-11115

not address the District's exhaustion arguments on their merits. Instead, T.B. argued that a 12(b)(1) motion to dismiss may only be adjudicated on the face of the pleadings and that T.B.'s amended complaint lacks any language that specifically mentions the IDEA or his status as a student receiving special education services.

The district court granted the District's motion, agreeing that the court lacked subject matter jurisdiction over T.B.'s claims because of T.B.'s failure to first exhaust his administrative remedies. T.B. filed a "motion for reconsideration" under Rule 59(e) and a motion for leave to file a second amended complaint. The district court denied both. T.B. appealed.

## II.

This court reviews a district court's grant of a 12(b)(1) motion to dismiss for lack of subject matter jurisdiction *de novo*, just as we would a dismissal under Rule 12(b)(6). [2] *McDonnel Grp., L.L.C. v. Great Lakes Ins. SE*, 923 F.3d 427, 430 (5th

---

[2] This circuit has not yet determined whether exhaustion under the IDEA is a jurisdictional requirement. *See, e.g.*, *Gardner v. Sch. Bd. Caddo Par.*, 958 F.2d 108, 112 (5th Cir. 1992) ("We do not decide whether exhaustion [of IDEA claim] is a jurisdictional requirement."); *Doe v. Harlandale Indep. Sch. Dist.*, No. SA-20-CV-00960-JKP, 2020 WL 6566854, at *2 (W.D. Tex. Nov. 9, 2020) (noting that "the Fifth Circuit has not directly addressed the point" of whether a plaintiff's failure to exhaust administrative remedies under the IDEA deprives the court of subject matter jurisdiction."). We note, however, that the Supreme Court has recently held that Title VII's administrative exhaustion requirement is not jurisdictional but is, instead, a mandatory claim-processing rule. *Fort Bend Cty., Texas v. Davis*, 139 S. Ct. 1843, 1851 (2019).

In this case, it does not matter. The District timely raised the plaintiff's failure to exhaust and argued that the district court should dismiss the plaintiff's claims under both Fed. R. Civ. P. 12(b)(1) and 12(b)(6). The district court analyzed the failure-to-exhaust argument solely as a jurisdictional claim and dismissed it on that basis. But even if failure to exhaust is not jurisdictional—an issue that was not briefed and that we do not decide here—the plaintiff's failure to exhaust is still fatal to his claims. Moreover, we may "affirm the district court's judgment on any grounds supported by the record." *U.S. ex rel. Farmer v. City of Houston*, 523 F.3d 333, 338 n. 8 (5th Cir. 2008) (quoting *Sobranes Recovery Pool I, LLC v. Todd & Hughes Constr. Corp.*, 509 F.3d 216, 221 (5th Cir. 2007)).

We note that we have traditionally affirmed dismissals without prejudice for failure to exhaust administrative remedies required by the IDEA. *See, e.g.*, *Flores v. Sch. Bd. of*

No. 19-11115

Cir. 2019); *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008). We take "the well-pled factual allegations of the complaint as true and view them in the light most favorable to the plaintiff." *Lane*, 529 F.3d at 557.

Rule 59(e) of the Federal Rules of Civil Procedure does not expressly recognize a "motion for reconsideration." *See* Fed. R. Civ. P. 59. However, "motions for reconsideration or rehearing are typically treated as Fed. R. Civ. P. 59(e) motions . . . ." *In re Stangel*, 68 F.3d 857, 859 (5th Cir. 1995). "[A] motion to alter or amend the judgment under Rule 59(e) 'must clearly establish either a manifest error of law or fact or must present newly discovered evidence' and 'cannot be used to raise arguments which could, and should, have been made before the judgment issued.'" *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 863–64 (5th Cir. 2003) (quoting *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990)).

This court reviews a district court's denial of a Rule 59(e) motion to alter or amend the judgement for abuse of discretion. *Trevino v. City of Fort Worth*, 944 F.3d 567, 570 (5th Cir. 2019). Likewise, this court reviews a district court's denial of a request to amend a complaint for abuse of discretion as well. *Word of Faith World Outreach Ctr. Church, Inc. v. Sawyer*, 90 F.3d 118, 124 (5th Cir. 1996).

### III.

### A.

The IDEA is meant to ensure that children with disabilities receive needed special education services. *See* 20 U.S.C. § 1400. It offers federal funds to states in exchange for their commitment to furnish a "free appropriate public education" ("FAPE") to all children with certain physical and intellectual disabilities. *Id.* § 1412(a)(1)(A). It also establishes formal procedures for resolving disputes between parents and school representatives. *Id.* § 1415(e). Under the IDEA, a plaintiff must exhaust these administrative procedures before filing a claim under

---

*DeSoto Par.*, 116 F. App'x 504, 511–12 (5th Cir. 2004) (affirming dismissal without prejudice for failure to exhaust); *Doe v. E. Baton Rouge Par. Sch. Bd.*, No. 96-31115, 1997 WL 450173 (5th Cir. 1997) (unpublished) (same).

similar laws when and only when the plaintiff's suit "seek[s] relief that is also available" under the IDEA. *Id.* § 1415(l).

The Supreme Court addressed the scope of this exhaustion requirement in *Fry v. Napoleon Community Schools*. 137 S. Ct. 743 (2017). Specifically, the Court held that the IDEA's "exhaustion rule hinges on whether a lawsuit seeks relief for the denial of a [FAPE]." *Id.* at 754. "If a lawsuit charges such a denial, the plaintiff cannot escape [exhaustion] merely by bringing her suit under a statute other than the IDEA." *Id.* Likewise, in a suit brought under a different statute, the exhaustion of the IDEA's procedures is not required if the remedy sought is not for the denial of a FAPE. *Id.*

However, a court cannot simply look for the use or non-use of particular words or labels to determine whether a plaintiff's complaint seeks relief for the denial of a FAPE. *Id.* at 755. "What matters is the crux—or in legal-speak, the gravamen—of the plaintiff's complaint, setting aside any attempts at artful pleading." *Id.*

The Court offered two "clues" as to how district courts may determine the gravamen of a complaint. *Id.* at 756–57. The first clue consists of two hypotheticals:

> First, could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was *not* a school—say, a public theater or library? And second, could an *adult* at the school—say, an employee or visitor—have pressed essentially the same grievance?

*Id.* at 756. Where a court answers both of those questions in the affirmative, the claim is not rooted in the denial of a FAPE, and the exhaustion of the IDEA's administrative remedies is not required. *Id.* Alternatively, where a court answers "no" to both, "then the complaint probably does concern a FAPE, even if it does not explicitly say so . . . ." *Id.*

However, the answers to these hypotheticals are not entirely dispositive. *See Doe v. Dallas Indep. Sch. Dist.*, 941 F.3d 224, 229 (5th Cir. 2019) ("[T]he Court did not limit analysis of this question to answering those two illustrative hypotheticals."). The second clue the Court offered was to look to the history of

No. 19-11115

the proceedings, particularly whether "a plaintiff has previously invoked the IDEA's formal procedures to handle the dispute," as another possible indicator that the gravamen of the suit is in the denial of a FAPE. *Fry*, 137 S. Ct. at 757. "[P]rior pursuit of the IDEA's administrative remedies will often provide strong evidence that the substance of a plaintiff's claim concerns the denial of a FAPE, even if the complaint never explicitly uses that term." *Id.*

Here, T.B.'s resort to the IDEA's administrative procedures before filing suit is a strong indicator that the gravamen of his complaint is in the denial of a FAPE even if the complaint makes no specific mention of a FAPE or the IDEA.[3]

The application of the two *Fry* hypotheticals is less clear. However, the District argued in its motion to dismiss that the answer to both questions is "no" because, in a special education setting, the use of physical force by T.B.'s teacher is properly characterized as a "restraint" based on that term's definition in § 37.0021(b)(1) of the Texas Education Code and § 89.1053(b)(2) of the Texas Administrative Code, both of which define restraint as "the use of physical force or a mechanical device to significantly restrict the free movement of all or a portion of the student's body." The District reasoned that school districts do not restrain adult employees or visitors, nor do school districts restrain students outside of the school setting. Therefore, the District argued, the gravamen of T.B.'s claim was more likely to be the denial of a FAPE and, thus, subject to exhaustion of the IDEA's administrative remedies.

We do not agree with the District's assertion that all physical force used in a special education setting is necessarily a "restraint." However, T.B.'s response

---

[3] The dissenting opinion proceeds as if the "history of the proceedings" clue always raises a fact issue. However, in this case, we see no reason not to accept the procedural history on its face. No party has alleged facts or made arguments in any pleadings or briefings that would indicate an alternative interpretation, and we need not invent them. *See McMillen v. New Caney Indep. Sch. Dist.*, 939 F.3d 640, 646 (5th Cir. 2019) (considering the plaintiff's previous complaint—containing allegations of IDEA violations—on its face as indication that the gravamen of the plaintiff's suit was the denial of a FAPE), *cert. denied*, 140 S. Ct. 2803 (2020).

No. 19-11115

to the District's motion to dismiss did not address the District's "restraint" argument or *Fry* analysis on their merits. Instead, T.B. first argued that a 12(b)(1) motion to dismiss may only be adjudicated on the face of the pleadings. This is not so. *See Morris v. Thompson*, 852 F.3d 416, 419 (5th Cir. 2017) ("When ruling on the [12(b)(1)] motion, the district court may rely on the complaint, undisputed facts in the record, and the court's resolution of disputed facts." (citing *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001))).

T.B. also argued that his amended complaint lacked any language that specifically mentions the IDEA or his status as a student receiving special education services. This is exactly the sort of "magic words" argument *Fry* seeks to avoid. *See* 137 S. Ct. at 755 ("[A] 'magic words' approach would make [the IDEA's] exhaustion rule too easy to bypass.").

We determine that, on the record before us, T.B.'s complaint seeks redress for denial of a FAPE. Therefore, under the IDEA he was required to exhaust his administrative remedies before bringing this claim to the district court. We agree with the district court that he has failed to do so. Thus, his complaint was properly dismissed.[4]

B.

After the case had already been dismissed, T.B. eventually raised arguments against the District's "restraint" argument and *Fry* analysis in his motion to reconsider. The district court declined to take up those arguments, correctly noting

---

[4] We disagree with the dissent that *Fry* requires or indeed says anything about a claim-by-claim approach for conducting an IDEA-exhaustion analysis, and we do not see occasion in this case to adopt such a requirement. Although the issue was not briefed, we note that *Fry* directs courts to analyze the plaintiff's "suit" or "complaint" but does not direct that courts conduct that analysis on a claim-by-claim basis. *See Fry*, 137 S. Ct. at 748 ("We hold that exhaustion is not necessary when the gravamen of the plaintiff's suit is something other than the denial of the IDEA's core guarantee"); *id.* at 752 ("[A] court should look to the substance, or gravamen, of the plaintiff's complaint."); *id.* at 755 ("What matters is the crux—or, in legal speak, the gravamen—of the plaintiff's complaint . . . .").

that such motions under Rule 59(e) "cannot be used to raise arguments which could, and should, have been made before the judgment issued." *Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 567 (5th Cir. 2003) (internal quotations omitted). This decision, as well as the district court's denial of leave to file a second amended complaint, falls squarely within the discretion of the district court. We do not disturb it here.

\*     \*     \*

T.B. failed to exhaust his administrative remedies, as required under the IDEA. Likewise, the district court did not abuse its discretion in denying T.B.'s motion to reconsider or request to amend. Therefore, we AFFIRM the judgment of the district court, dismissing this case without prejudice for failure to exhaust administrative remedies.

No. 19-11115

Stephen A. Higginson, *Circuit Judge*, dissenting:

This case requires the court to determine the limits of the IDEA's administrative exhaustion requirement in the context of an allegation of school-based assault. The majority concludes that the plaintiff's previous invocation of the IDEA's grievance process—paired with language in the complaint that appears to challenge the adequacy of T.B.'s education—provide sufficient grounds to conclude that T.B. was required to exhaust his administrative remedies before filing suit in federal court.

I dissent both because the district court did not rely on T.B.'s invocation of the administrative process when it entered its 12(b)(1) dismissal and also, more importantly, because the district court erred by overlooking several important legal principles stated by the Supreme Court in *Fry v. Napoleon Community Schools*, 137 S. Ct. 743 (2017), and in caselaw requiring a claim-by-claim consideration of exhaustion under *Fry*.

## I. Administrative Exhaustion Overview

The Individuals with Disabilities Education Act ("IDEA") offers federal funds to states "in exchange for a commitment: to furnish a 'free appropriate public education'—more concisely known as a FAPE—to all children with certain physical or intellectual disabilities." *Fry*, 137 S. Ct. at 748. The statute establishes a set of collaborative procedures by which parents and school districts jointly develop individualized education programs, or IEPs, for students with disabilities. *Id.* at 749; *see also* 20 U.S.C. § 1414. In the event that a parent is unhappy with the school's IEP or its implementation, "the IDEA establishes formal procedures for resolving disputes." *Fry*, 137 S. Ct. at 749. These procedures allow a dissatisfied parent to seek a due process hearing before an impartial hearing officer. *Id.* The hearing officer's decision may be appealed to the state educational agency. *See* 20 U.S.C. § 1415(g)(2).

Because hearing officers and the state education department have unique expertise in special education, the statute requires parties to use these procedures before they may bring an action in federal court. *See id.* § 1415(i)(2). The IDEA also

acknowledges, however, that other related laws—including the Rehabilitation Act and the Americans with Disabilities Act—may provide relief for similar violations. Thus, the statute contains an exhaustion clause explaining that parents may make use of these statutes, but they may not "fil[e] . . . a civil action under such laws seeking relief that is *also available* under [the IDEA]" unless they first "exhaust[] [their claims] to the same extent as would be required had the action been brought under [the IDEA]." *Id.* § 1415(*l*) (emphasis added).

The Supreme Court recently addressed the scope of the IDEA's exhaustion clause in its unanimous decision, *Fry v. Napoleon Community Schools*. The Court began by noting that the obligation to provide a FAPE is the "principal purpose" of the IDEA. 137 S. Ct. at 753. As a result, the IDEA's administrative procedures are primarily concerned with determining "whether a school has met that obligation." *Id.* at 754. Thus, the Court explained that the statute's administrative exhaustion rule "hinges on whether a lawsuit seeks relief for the denial of a [FAPE]." *Id.* If so, a plaintiff may not escape the exhaustion requirement "merely by bringing her suit under a statute other than the IDEA." *Id.* However, if a suit is brought under a statute other than the IDEA and "the remedy sought is not for the denial of a FAPE, . . . exhaustion of the IDEA's procedures is not required." *Id.* The Court clarified that this allows a plaintiff seeking a remedy for a violation *other* than the denial of a FAPE to sue in federal court "even when the suit arises directly from a school's treatment of a child with a disability—and so could be said to relate in some way to her education." *Id.*

In *Fry*, the Court explained that determining whether a suit seeks relief for the denial of a FAPE requires an analysis of the "substance, not surface" of the plaintiff's complaint. *Id.* at 755. As the majority today acknowledges, the ultimate question is whether "the gravamen of a complaint seeks redress for a school's failure to provide a FAPE, even if not phrased or framed in precisely that way." *Id.* The Supreme Court provided two helpful "clue[s]" that can assist a court in answering this question:

> First, could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was *not* a

school—say, a public theater or library? And second, could an *adult* at the school—say, an employee or visitor—have pressed essentially the same grievance? When the answer to those questions is yes, a complaint that does not expressly allege the denial of a FAPE is also unlikely to be truly about that subject[.]

*Id.* at 756. The Court did not suggest that these questions are necessarily dispositive to the exhaustion analysis, nor are they the only questions that may be relevant. Instead, the Court described the analysis as fact-bound and nuanced, dependent on a careful consideration of the plaintiff's claims. *See id.* at 757 (remanding for the Court of Appeals to conduct the analysis "just set forward"); *see also id.* at 759 (Alito, J., concurring in part) (explaining that the "clues" are just "for the purpose of assisting lower courts," and should not be dispositive). Likewise, in *Doe v. Dallas Independent School District*, 941 F.3d 224 (5th Cir. 2019), our court recently explained that the Supreme Court's decision in *Fry* "did not limit analysis of [the exhaustion] question to answering those two illustrative hypotheticals." *Id.* at 229.

Since *Fry*, our court has addressed the IDEA's exhaustion requirement on just a handful of occasions. Notably, in *McMillen v. New Caney Independent School District*, 939 F.3d 640 (5th Cir. 2019), the court answered a question left open by *Fry*: "whether the exhaustion requirement applies when a plaintiff is seeking remedies not available under the IDEA." *Id.* at 647. The court answered in the affirmative, joining the other circuits that have reached this question. *Id.* (citing cases in the First, Second, Third, Fourth, Seventh, Eighth, Tenth, and Eleventh Circuits). Therefore, the fact that a plaintiff seeks traditional compensatory damages, which are not available under the IDEA, does not relieve a plaintiff from exhausting a claim that challenges the denial of a FAPE. *Id.* at 648.

## II. *Fry*'s Footnote Nine: The Physical Abuse Exception

In *Fry*, the Supreme Court cited with approval an example provided by the school district to help identify the types of claims that are *not* subject to the exhaustion requirement. The Court explained that if a "teacher, acting out of animus or frustration, strikes a student with a disability," the student's claims arising out of that event are "unlikely to involve the adequacy of special

education—and thus [are] unlikely to require exhaustion." *Fry*, 137 S. Ct. at 756 n.9. This is true even though "the suit could be said to relate, in both genesis and effect, to the child's education." *Id.*

In its order dismissing this case, the district court did not engage with this footnote—nor did it mention its existence. T.B. argues on appeal that his claims match the hypothetical situation described in footnote 9: he sues to challenge a teacher's actions in "knock[ing] him to the ground, dragg[ing] him through two classrooms, and climb[ing] on top of him." Though he is a student with a disability, he does not argue that the teacher's physical response to his disobedience was a misguided attempt to utilize inappropriate "restraints" that were authorized in his IEP; instead, he alleges that his teacher's actions were not connected to a legitimate disciplinary purpose, and amounted instead to an unprovoked physical assault, resulting from animus or frustration. *See K.L. v. Scranton Sch. Dist.*, No. 3:19-cv-0670, 2020 WL 42723, at *4 (M.D. Pa. Jan. 3, 2020) (holding that plaintiff was not required to exhaust claims of intentional discrimination and negligence where the parties do not state "whether an IEP contains language regarding the restraint" of the student and where "the allegations in the complaint do not identify any disagreement . . . regarding [the student's] rights to a FAPE or his IEP").

In cases before and after *Fry*, circuit courts across the country have similarly held that claims alleging abuse, assault, and harassment—even when suffered by a student with a disability in the school environment—do *not* require exhaustion. In *F.H. ex rel. Hall v. Memphis City Schools*, 764 F.3d 638 (6th Cir. 2014), for example, the Sixth Circuit held that a plaintiff who alleged "a litany of specific allegations of physical, sexual, and verbal abuse" by school aides was not required to exhaust those claims before seeking relief in federal court. *Id.* at 641. The court noted that these injuries are "non-educational" in nature, and "cannot be redressed by any remedy available under the IDEA." *Id.* at 643. To require otherwise "would create an additional administrative barrier not present for non-disabled children." *Id.* at 644. In an emphatic concurrence, Judge Kethledge echoed this conclusion, explaining that it would "belittle" the plaintiff's injuries to call them "educational." *Id.* at 646 (Kethledge, J., concurring) ("The gravamen of

[plaintiff's] claim is not that the conduct described in his complaint might reduce his SAT scores. The gravamen of his claim, rather, is that this conduct was an attack upon F.H.'s dignity as a human being."); *see also Muskrat v. Deer Creek Pub. Schs.*, 715 F.3d 775, 785 (10th Cir. 2013) ("No authority holds that Congress meant to funnel isolated instances of common law torts into the IDEA exhaustion regime."); *McCormick v. Waukegan Sch. Dist. No. 60*, 374 F.3d 564, 569 (7th Cir. 2004) ("[N]o change to his IEP could remedy, even in part, the damage done to [plaintiff's] body."); *Padilla ex rel. Padilla v. Sch. Dist. No. 1*, 233 F.3d 1268, 1274 (10th Cir. 2000) (holding that plaintiff who suffered "fractured skull and other physical injuries" did not have to exhaust because she "makes no complaints regarding her current educational situation").

Most recently, in *Doe v. Dallas Independent School District*, our court held that a plaintiff alleging sexual assault and rape at school was not required to exhaust her claims before filing suit in federal court. 941 F.3d at 227–28. Though the plaintiff mentioned that she had a disability, the gravamen of her complaint was about the school's discrimination, which allegedly gave rise to her assault—not the denial of a FAPE. *Id.* Because a student without a disability could have brought the same "allegation that the school was indifferent to her sexual abuse," the court concluded that the plaintiff was not required to exhaust her claims using the IDEA's due process procedures. *Id.* at 229.

The school district does not argue that this footnote or the related caselaw are irrelevant to the analysis, but rather asserts that any arguments based on the footnote have been waived by the plaintiff. It is true that T.B. failed to cite footnote 9 or any of these cases in his response to the defendant's motion to dismiss. The first time that T.B. apparently brought up this argument was in a motion for reconsideration. At that point, the district court refused to consider the argument, holding that Rule 59(e) motions "cannot be used to raise arguments which could, and should, have been made before the judgment issued."

I agree that T.B.'s timing was flawed, but I'm not convinced that it is fatal. Though T.B.'s argument based on footnote nine is new, it is a *legal* argument based on binding legal precedent. Our court has explained that an appeals court can

consider a new argument raised for the first time on appeal "when the issue involved is a pure question of law and a miscarriage of justice would result from our failure to consider it." *N. Alamo Water Supply Corp. v. City of San Juan*, 90 F.3d 910, 916 (5th Cir. 1996), *overruled on other grounds by Green Valley Special Util. Dist. v. City of Schertz*, 969 F.3d 460 (5th Cir. 2020). A similar rule could well apply to the district court's consideration of a legal argument in the context of a reconsideration motion. Though the district court relies on *Schiller v. Physicians Resource Group Inc.*, 342 F.3d 563 (5th Cir. 2003), to argue that new arguments cannot be raised in a Rule 59(e) motion, the plaintiff in that case attempted to introduce new *factual* allegations—not legal arguments. *Id.* at 568; *see also Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 923 (11th Cir. 2018) ("[P]arties cannot waive the application of the correct law or stipulate to an incorrect legal test.").

In this case, the district court's decision not to consider footnote nine is especially problematic because the court was clearly aware of *Fry*. Indeed, *Fry* and the Supreme Court's two hypotheticals formed the basis for the district court's conclusions. A court should not selectively address portions of binding law, above all not a unanimous, on-point Supreme Court decision cited by the parties. Even if the district court ultimately concludes that footnote nine does not alter its assessment, I would remand so that that court engages with Supreme Court precedent in full, as applied to T.B.'s claims.

### III. Historic Invocation of the Administrative Process

Remand is further appropriate because the Supreme Court in *Fry* provided an additional "clue" to the exhaustion inquiry, also overlooked in the district court's dismissal order albeit comprehensively discussed by the majority. The Supreme Court explained that "the history of the proceedings" can provide a "further sign that the gravamen of a suit is the denial of a FAPE." *Fry*, 137 S. Ct. at 757. If a plaintiff has "previously invoked the IDEA's formal procedures to handle the dispute," that fact may be persuasive evidence that the plaintiff's claims stem from the denial of a FAPE. *Id.* The Court explained, however, that the analysis remains fact-dependent: "a court may conclude, for example, that the move to a courtroom came from a late-acquired awareness that the school had fulfilled its

No. 19-11115

FAPE obligation and that the grievance involves something else entirely." *Id.* Thus, the fact that a plaintiff previously invoked the administrative process is not necessarily dispositive. *Id.*

As the majority describes, before T.B. filed his suit in federal court, T.B. filed a complaint for a due process hearing with an impartial hearing officer. The complaint was dismissed as time-barred, and that determination has been affirmed. *See T.B. v. Nw. Indep. Sch. Dist.*, No. 4:18-CV-00985-BJ (N.D. Tex. June 2, 2020). I agree with the majority that invoking the administrative process is an important indicator of the gravamen of the complaint. However, given the Supreme Court's explanation that the history of the suit requires a fact-based determination, I am not persuaded that T.B.'s previous invocation of the IDEA's administrative procedures *necessarily* means that he should have exhausted. *See Fry*, 137 S. Ct. at 759 (Alito, J., concurring in part) ("It is easy to imagine circumstances under which parents might start down the IDEA road and then change course and file an action under the ADA or the Rehabilitation Act that seeks relief that the IDEA cannot provide."). Moreover, even if T.B.'s claims were not outside of the IDEA statute of limitations, a hearing officer could have dismissed T.B.'s claims if the officer concluded that they were not capable of resolution by the IDEA's procedures. *See id.* at 754 (explaining that, if a complaint is not alleging the denial of a FAPE, "the plaintiff could not get any relief from [the IDEA's] procedures," and the hearing officer "would have to send her away empty-handed").

Our court has addressed this "clue" in *Fry* on one occasion. In *McMillen*, the court held that the plaintiff's earlier allegation of an IDEA violation provided further evidence that the gravamen of his complaint was the denial of a FAPE. *McMillen*, 939 F.3d at 646. The *McMillen* court did not suggest that the prior history of the case was the *only* factor relevant to the exhaustion analysis; rather, this history was just one of many indicators that the plaintiff should have exhausted. *Id.* *McMillen* is also not directly on point, because the court considered previous versions of the plaintiff's *federal* complaint—not a previous invocation of the administrative process. *Id.*

Importantly, the district court did not rely upon—nor even mention—the fact that T.B. had previously initiated this complaint as an administrative proceeding, so the court did not make *any* factual conclusions about the meaning of T.B.'s previous invocation. Given the fact-bound analysis urged by *Fry* and the limited caselaw on this portion of *Fry*, I would remand this issue for the district court to consider.

## IV. Definition of "Gravamen": Claim by Claim Approach

The third reason I respectfully dissent and would remand to the district court is because that court's exhaustion analysis focused on T.B.'s complaint as a whole, rather than on a claim-by-claim basis. At least two circuit courts—the Third Circuit and the First Circuit—have held that *Fry* requires a court to separate each claim of a plaintiff's complaint, determining whether each claim stems from an alleged denial of a FAPE. Earlier caselaw in this circuit and elsewhere also supports this conclusion. Because a claim-by-claim analysis might reveal that only *some* of T.B.'s claims are subject to the IDEA's exhaustion provision, I further think that remand is prudent.

In *Wellman v. Butler Area School District*, 877 F.3d 125 (3d Cir. 2017), the Third Circuit held that *Fry* requires a "claim-by-claim approach" to the exhaustion question. *Id.* at 132. The court acknowledged that "the Supreme Court's language spoke in terms of the 'complaint,'" but held that this language did not require a blanket approach to exhaustion. *Id.* It relied on the Black's Law Dictionary definition of "gravamen": "[t]he substantial point or essence of a *claim*, *grievance*, *or complaint*." *Id.* (emphasis added). Thus, because the term "gravamen" "bespeaks concern with both individual claims as well as the collection of claims called a complaint," courts must consider "the actual claims" before making an exhaustion determination. *Id.* To hold otherwise, the court observed, "could result in situations where claims that are included in a complaint because they involve the same parties or course of events but do not involve the provision of a FAPE get swept up and forced into administrative proceedings with claims that are seeking redress for a school's failure to provide a FAPE." *Id.* Such an outcome would not vindicate the expertise of IDEA hearing officers, since education agencies "do not

employ . . . expertise when it comes to claims that do not involve the provision of a FAPE." *Id.*

Recently, in *Doucette v. Georgetown Public Schools*, 936 F.3d 16 (1st Cir. 2019), the First Circuit adopted the *Wellman* formulation and applied "the *Fry* framework to each of the [plaintiff's] claims." *Id.* at 24. In *Doucette*, Judge Selya dissented from the majority's analysis, but explained that he agreed with the majority's adoption of *Wellman*. He provided a relevant anecdote to bolster his reasoning, explaining that even if "a complaint includes FAPE denial allegations, an entirely distinct claim that in no way concerns the denial of a FAPE (like an allegation of physical assault on a school bus) would fall outside the IDEA's exhaustion requirement." *Id.* at 35 (Selya, J., dissenting).

Though our court does not seem to have reached this question since *Fry*, earlier cases demonstrate that we engage in a claim-by-claim approach to exhaustion. In *Flores v. School Board of DeSoto Parish*, 116 F. App'x 504 (5th Cir. 2004), for example, the court held that a plaintiff's IDEA claims must be exhausted, but did not require exhaustion of the plaintiff's Section 1983 claims, including her claim for excessive force. *Id.* at 509–11. Other courts have employed similar methods, applying a claim-by-claim analysis to determine whether exhaustion was required. *See Muskrat*, 715 F.3d at 785–87; *P.G. ex rel. R.G. v. Rutherford Cty. Bd. of Educ.*, 313 F. Supp. 3d 891, 899 (M.D. Tenn. 2018) (applying *Wellman* to examine "each of Plaintiff's claims individually").

Here, the district court did not individually consider each of the claims in T.B.'s complaint when analyzing the exhaustion requirement. T.B. asserts claims for violations of several laws: the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, the Fourth Amendment, and the Fourteenth Amendment. Instead, the district court's conclusion focused on one allegation in T.B.'s complaint, which alleged that the school district failed to provide appropriate responses to T.B.'s emotional injuries in the aftermath of the alleged assault, including "a psychological assessment; school-based counseling services; an aide or shadow to observe the Student at the school or social skills training." Though this allegation may support the conclusion that at least some of T.B.'s claims should

have been exhausted, it is not clear that it requires exhaustion of those claims seeking relief for the assault *itself*—as opposed to the lingering effects of the assault and the school's alleged failure to appropriately address them. *See, e.g.*, *McCormick*, 374 F.3d at 566 (suggesting that a claim alleging "ongoing or continuing emotional damages" may require exhaustion, while one based on the precipitating physical injury does not).

Ultimately, the district court may reach the same conclusion upon engaging in a claim-by-claim analysis, or it may conclude that T.B.'s earlier invocation of the administrative process demonstrates the necessity of exhaustion. But, because the district court's order did not engage with these significant legal points, I would remand this matter so that the district court can conduct this analysis in the first instance.