# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
October 7, 2022

Lyle W. Cayce
Clerk

No. 21-10849

---

W.S., *by and through his next friend Elizabeth S.G.*,

*Plaintiff—Appellant*,

*versus*

Dallas Independent School District,

*Defendant—Appellee.*

---

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:20-CV-2776

---

Before King, Duncan, and Engelhardt, *Circuit Judges*.

Per Curiam:*

Plaintiff-Appellant W.S. appeals the district court's dismissal of his claims brought under the Americans with Disabilities Act ("ADA") and § 504 of the Rehabilitation Act. The district court concluded it lacked jurisdiction to hear these claims because W.S. failed first to exhaust his administrative remedies. We affirm.

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 21-10849

I.

W.S. is a minor with autism and Down syndrome. Before coming to the United States, he spent the first nine years of his life in a crib in Bulgaria, where he was severely malnourished. As a result of these formative deprivations, W.S. developed a propensity to consume objects within his reach, whether edible or not, causing him to choke or experience other related emergencies. Upon W.S.'s enrollment in school, the Dallas Independent School District ("DISD") provided him with an "Individualized Education Program" ("IEP") pursuant to the Individuals with Disabilities Education Act ("IDEA"). The IEP was designed to include individually tailored services to accommodate W.S.'s disabilities.

Although the IEP identified protocols to ensure W.S.'s safety, W.S. nonetheless ingested inedible objects on multiple occasions, harming himself in the process. In May 2019, after one such incident, W.S.'s parent, Elizabeth, emailed DISD employees explaining the gravity of W.S.'s disability and outlining solutions to prevent W.S. from consuming inedible objects, such as storing away small objects and supervising him while using small educational items. Subsequently, school officials and Elizabeth convened an Admission, Review, and Dismissal Meeting ("ARD"),[1] where Elizabeth sought assurances that W.S.'s IEP sufficiently documented his choking hazards and that DISD would make reasonable accommodations to better ensure his safety at school.

The problems persisted, however. A month later, W.S. ingested a plastic straw and pen cap while at school. Elizabeth again emailed DISD

---

[1] An ARD is an informal procedure under the IDEA where a committee—comprised of the child's parents, special education teachers, and school district employees—meets to develop a child's IEP. 19 Tex. Admin. Code § 89.1050.

No. 21-10849

employees explaining W.S.'s choking risk and urging that his "IEP clearly states that he must have constant supervision." Following this incident, DISD agreed to Elizabeth's request for (and W.S.'s physician's recommendation for) one-on-one supervision. But W.S. was yet again not properly supervised: he ingested six rubber gloves that required emergency surgery to remove.

Elizabeth sued on W.S.'s behalf under the ADA and § 504 of the Rehabilitation Act, claiming DISD intentionally discriminated against W.S. by failing to provide a safe environment and reasonable accommodations. W.S. claimed compensatory damages for his injuries. DISD moved to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The district court granted DISD's 12(b)(1) motion, concluding it lacked jurisdiction because W.S. failed to exhaust his administrative remedies. W.S. timely appealed.

## II.

We review *de novo* a district court's grant of a 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. *T.B., by & through Bell v. Nw. Indep. Sch. Dist.*, 980 F.3d 1047, 1050 (5th Cir. 2020).[2] We take "the well-pled factual allegations of the complaint as true and view them in the light most favorable to the plaintiff." *Id.* at 1051 (quotation marks omitted).

---

[2] Our circuit has not addressed whether the IDEA's exhaustion requirement is jurisdictional. *See Logan v. Morris Jeff Cmty. Sch.*, No. 21-30258, 2021 WL 4451980, at *2 (5th Cir. Sept. 28, 2021); *T.B.*, 980 F.3d at 1050 n.2. The issue was not briefed and does not impact this appeal. DISD timely raised exhaustion in its 12(b)(1) and 12(b)(6) motions, and we review a district court's ruling on either motion under the same *de novo* standard.

III.

On appeal, W.S. challenges the district court's ruling that he had to exhaust the IDEA's administrative remedies before pressing his disability-discrimination claims in federal court. For the following reasons, we conclude that the district court did not err.

A.

The IDEA "offers States federal funds to assist in educating children with disabilities." *Endrew F. ex rel. Joseph F. v. Douglas Cnty. Sch. Dist. RE-1*, 137 S. Ct. 988, 993 (2017); *see* 20 U.S.C. § 1400 *et seq.* In exchange for the funds, States agree to provide a "free appropriate public education," or "FAPE," to all children with certain disabilities. *T.B.*, 980 F.3d at 1051 (quoting 20 U.S.C. § 1412(a)(1)(A)). A FAPE includes both special-education instruction and "related services," such as necessary "support services." *Endrew F.*, 137 S. Ct. at 994 (quoting 20 U.S.C. § 1401(26), (29)). States document a disabled student's individualized needs and services in an IEP, which "serves as the 'primary vehicle' for providing each child with the promised FAPE." *Fry v. Napoleon Cmty. Schs.*, 137 S. Ct. 743, 749 (2017) (citation omitted). Parents dissatisfied with their child's IEP must first exhaust the IDEA's administrative procedures before seeking relief in federal court. 20 U.S.C. § 1415(f)–(g), (*l*).

To prevent plaintiffs from side-stepping the IDEA's administrative procedures, Congress extended the exhaustion requirement to certain non-IDEA claims. *Fry*, 137 S. Ct. at 750. Section 1415(*l*) provides that students bringing claims under other disability laws, like the ADA or Rehabilitation Act, must first exhaust the IDEA's administrative remedies if their claims "seek[] relief that is also available under [the IDEA]." 20 U.S.C. § 1415(*l*).

In *Fry v. Napoleon Community Schools*, the Supreme Court explained how to apply § 1415(*l*). Whether a plaintiff's non-IDEA claims are subject to

§ 1415(*l*) exhaustion "hinges on whether [he] seeks relief for the denial of a FAPE" since this is the only "relief" the IDEA provides. *Fry*, 137 S. Ct. at 754. "If a lawsuit charges such a denial, the plaintiff cannot escape [exhaustion] merely by bringing [his] suit under a statute other than the IDEA." *T.B.*, 980 F.3d at 1052 (alteration in original) (quoting *Fry*, 137 S. Ct. at 754). The Court added that, in reviewing the complaint, we should not overemphasize a plaintiff's "use (or non-use) of particular labels and terms," because a "'magic words' approach would make § 1415(*l*)'s exhaustion rule too easy to bypass." *Fry*, 137 S. Ct. at 755. Instead, we must look to the "substance" of the plaintiff's claims to see whether the "gravamen of [his] complaint seeks redress for a school's failure to provide a FAPE, even if not phrased or framed in precisely that way." *Ibid.*

If this inquiry does not resolve the matter, *Fry* offered additional guidance. The Court first sketched two instructive hypotheticals:

> First, could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was *not* a school—say, a public theatre or library? And second, could an *adult* at the school—say, an employee or visitor—have pressed essentially the same grievance?

*Id.* at 756. A "yes" answer to those questions would suggest that the complaint is not rooted in the denial of a FAPE and that § 1415(*l*) exhaustion is not required. *Ibid.* Additionally, *Fry* told courts to review the "history of the proceedings." *Id.* at 757. A plaintiff's previous pursuit of IDEA administrative remedies "will often provide strong evidence that the substance of a plaintiff's claim concerns the denial of a FAPE." *Ibid.* Both of these clues are useful "indicator[s]" but are "not entirely dispositive" of the necessity for § 1415(*l*) exhaustion. *T.B.*, 980 F.3d at 1052.

B.

Applying *Fry*, we conclude that W.S.'s claims are subject to § 1415(*l*) exhaustion.

First, we examine the substance of W.S.'s claims. In essence, W.S. alleges that DISD failed to provide the necessary services listed in his IEP to accommodate his disability. Because a student's IEP is the primary vehicle for providing a FAPE," W.S.'s claim "sound[s] in the IDEA." *Fry*, 137 S. Ct. *McMillen v. New Caney Indep. Sch. Dist.*, 939 F.3d 640, 645 (5th Cir. 2019); *see also Logan v. Morris Jeff Cnty. Sch.*, No. 21-30258, 2021 WL 4451980, at *2 (5th Cir. Sept. 28, 2021) ("[W]hen a complaint raises . . . the lack of support services for students with disabilities, it likely seeks relief that is available under the IDEA."). Consider the complaint's specific allegations: W.S. alleges that but for DISD's failure to constantly supervise him, provide one-on-one supervision, and remove small, inedible objects from his environment, he would not have been harmed. DISD's duty to provide such individualized services arises from the district's FAPE obligations. Those obligations require the district to provide "appropriate and necessary accommodations tailored to [W.S.'s] unique and individualized needs." *Heston, Next Friend of A.H v. Austin Indep. Sch. Dist.*, 816 F. App'x 977, 981 (5th Cir. 2020) (cleaned up); *see also Lillbask ex rel. Mauclaire v. Conn. Dep't of Educ.*, 397 F.3d 77, 92–94 (2d Cir. 2005) (finding "related services" includes addressing safety concerns such as removing choking hazards). Ultimately, then, W.S. claims DISD failed to meet these obligations, and so his claims—although brought under the ADA and Rehabilitation Act—are subject to IDEA exhaustion. *See Heston*, 816 F. App'x at 982 (disabled student's ADA and Rehabilitation Act claims were subject to IDEA exhaustion because they were premised on inadequate supervision, which "fundamentally concern[s] a student's educational needs").

In response, W.S. suggests an alternative reading of his complaint. His claims, he argues, really concern DISD's failure to heed his parent's request to remove choking hazards from his environment. He argues that such a request is more like asking to modify a physical space, which falls under the ambit of general disability-discrimination laws and not the IDEA. We disagree. Accepting W.S.'s argument would require us to overlook the complaint's other allegations about his harm resulting from DISD's deficient supervision and its failure to comply with his IEP. But we must review the complaint as a whole rather than each allegation in isolation. *T.B.*, 980 F.3d at 1053 n.4. And even if we could take a claim-by-claim approach, W.S.'s request to remove choking hazards from the classroom still seeks an accommodation tied to his unique educational-access needs, stemming from DISD's FAPE obligations. In other words, because a "choking hazard . . . could interfere with a disabled child's right to receive a [FAPE]," the IDEA's administrative procedures can provide the relief W.S. seeks through a revised IEP. *Lillbask*, 397 F.3d at 93. W.S.'s claims are, therefore, subject to § 1415(*l*) exhaustion.

Considering the *Fry* hypotheticals reinforces this conclusion. *See Fry*, 137 S. Ct. at 756. Under the first hypothetical, W.S. would have no claim against a public library or theater because such facilities are not required to accommodate his disability by providing one-on-one supervision or removing inedible objects. *See Heston*, 816 F. App'x at 982 (plaintiff's deficient supervision claim failed the first *Fry* hypothetical because non-school "facilities are not required to accommodate a learning disability by providing a trained and supervised aide"). Likewise, for the second hypothetical, it is hard to "imagine an adult visitor or employee" bringing a viable claim against the school for failure to remove indigestible choking hazards. *Fry*, 137 S. Ct. at 757. So, here, "the FAPE requirement is all that explains why only [W.S.]

in the school setting . . . has a viable claim," showing that his complaint really targets the district's failure to provide a FAPE. *Id.* at 756.

Turning to *Fry*'s second clue—the history of proceedings—W.S. contends his decision *not* to pursue IDEA relief shows his complaint is not really for a denial of FAPE. As discussed, when a plaintiff "resort[s] to the IDEA's administrative procedures before filing suit," this provides a "strong indicator that the gravamen of his complaint is in the denial of a FAPE." *T.B.*, 980 F.3d at 1052. The inverse is not true, however. If it were, plaintiffs would be incentivized to forgo the IDEA's administrative procedures to evade the exhaustion requirement. *See, e.g.*, *Logan*, 2021 WL 4451980, at *1 (finding complaint asserting Rehabilitation Act and ADA claims actually concerned denial of a FAPE, even though student did not previously pursue IDEA procedures).

W.S. also argues that because he seeks only compensatory damages—which are unavailable under the IDEA[3]—his complaint does not seek "relief available" under the IDEA. Our court has previously rejected this argument, however. We have explained that "relief available" under § 1415(*l*) refers not to a plaintiff's requested remedies but rather whether the IDEA can remedy the type of conduct a plaintiff complains of. *McMillen*, 939 F.3d at 648. Otherwise, a plaintiff could sidestep the IDEA's exhaustion requirement "merely by tacking on a request for money damages." *Ibid.* (quotation omitted).

---

[3] The IDEA provides "equitable monetary awards, such as reimbursement of expenses like private school tuition a family unnecessarily incurred in the past to provide special education services," but it does not provide "traditional compensatory damages," such as "damages for injuries." *McMillen*, 939 F.3d at 646–47.

No. 21-10849

In sum, because W.S. essentially seeks relief for denial of a FAPE, he must first exhaust IDEA's administrative procedures under § 1415(*l*). The district correctly dismissed his complaint for lack of jurisdiction.

AFFIRMED.