# United States Court of Appeals
# for the Fifth Circuit

───────────────

No. 24-40141

───────────────

R.W., *by and through his next friends, Max W. and Angel W.*,

> *Plaintiff—Appellant*,

*versus*

CLEAR CREEK INDEPENDENT SCHOOL DISTRICT,

> *Defendant—Appellee*.

───────────────────────────────────

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 3:23-CV-297

───────────────────────────────────

Before RICHMAN, GRAVES, and RAMIREZ, *Circuit Judges*.

PER CURIAM:[*]

R.W., a student who requires special education and related services for his disabilities, appeals the dismissal of his lawsuit challenging the individualized education program developed for him by the Clear Creek Independent School District (CCISD). We AFFIRM.

───────────────────────

[*] This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

United States Court of Appeals
Fifth Circuit
**FILED**
March 13, 2025
Lyle W. Cayce
Clerk

No. 24-40141

I

A

At birth, R.W. experienced a traumatic brain injury that resulted in several medical complications, including Cortical Visual Impairment (CVI). CVI is a brain-based form of visual impairment, as opposed to an eye-based form. Children with CVI can see but may have difficulty interpreting what they see; for example, they are believed to see the world as a "visual kaleidoscope." Their functional vision can improve with the use of visual supports, accommodations, and increased interventions.

R.W. receives special education and related services at CCISD through an Individualized Education Program (IEP). For the 2021–2022 school year, CCISD did not include vision goals in R.W.'s IEP; it instead focused on the use of braille. R.W.'s parents consulted an expert in CVI, Dr. Christine Roman, who made recommendations about how CCISD could better facilitate R.W.'s functional vision. Although CCISD made changes to R.W.'s IEP, his parents were still dissatisfied with his education at the end of the school year, and they requested a due process hearing.

After a four-day hearing, on November 22, 2022, the hearing officer found that "[R.W.] was not provided a [Free Appropriate Public Education (FAPE)] during the relevant time period and his vision services were not reasonably calculated to confer educational benefit in light of his circumstances." The decision provided that for the remainder of the 2022–2023 school year, CCISD must: (1) retain a consultant with expertise in CVI to supervise the development and implementation of R.W.'s IEP, (2) have that consultant meet with R.W.'s teachers at various times, (3) arrange for the consultant to test R.W. and discuss the results at the next annual meeting, (4) have the consultant train staff on CVI, and (5) schedule a meeting to revise R.W.'s IEP consistent with the consultant's

2

recommendations. CCISD contracted with a CVI consultant and provided some training to its employees, but it did not follow all the consultant's recommendations and chose not to pay for additional training or services beyond the 2022–2023 school year.

R.W. claims CCISD's school board specifically delegated implementation of the hearing officer's decision to the school officials who were directly responsible for denying him a FAPE. Those officials allegedly submitted evidence to the Texas Education Agency (TEA) to show CCISD's compliance with the decision, and on May 12, 2023, the TEA concluded that CCISD had fully implemented it.

B

On September 11, 2023, R.W., by and through his parents, (collectively, R.W.), sued CCISD. He alleged that by not adequately implementing the hearing officer's decision, CCISD (1) failed to provide him a FAPE under the Individuals with Disabilities Education Act (IDEA); (2) deprived him of his constitutional and statutory rights under 42 U.S.C. § 1983; and (3) unlawfully discriminated against him under § 504 of the Rehabilitation Act of 1973. He also claimed that during the 2022–2023 school year, CCISD failed to provide him with a primary paraprofessional, shut down its lines of communication with his parents, and failed to take measures—or even communicate with his parents—after he suffered physical harm on campus.

CCISD moved to dismiss all claims, and the district court granted the motion, finding that R.W. was not "'a party aggrieved by the findings and decision' of a hearing officer" under the IDEA, and he failed to state a claim under § 1983 and § 504. R.W. timely appealed.

## II

We review a district court's dismissal of claims under Fed. R. Civ. P. 12(b)(1) and (6) *de novo*. *T.B. ex rel. Bell v. N.W. Indep. Sch. Dist.*, 980 F.3d 1047, 1050 (5th Cir. 2020). "Under 12(b)(1), a claim is 'properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate' the claim." *In re FEMA Trailer Formaldehyde Prod. Liab. Litig. (Miss. Plaintiffs)*, 668 F.3d 281, 286 (5th Cir. 2012) (quoting *Home Builders Ass'n, Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)). Under 12(b)(6), the court must accept well-pleaded facts as true and view facts in the light most favorable to the plaintiff. *PHI Grp., Inc. v. Zurich Am. Ins. Co.*, 58 F.4th 838, 841 (5th Cir. 2023). "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## III

R.W. argues that the district court erred in finding that the IDEA does not give rise to a cause of action based on a school district's failure to implement a hearing officer's decision.

The IDEA was created to ensure that children with disabilities are afforded a FAPE designed to meet their needs. *T.B.*, 980 F.3d at 1051 (citing 20 U.S.C. §§ 1400, 1412(a)(1)(A)); *D.G. ex rel. LaNisha T. v. New Caney Indep. Sch. Dist.*, 806 F.3d 310, 312 (5th Cir. 2015). It "establishes formal [administrative] procedures for resolving disputes between parents and school representatives" that must be exhausted before plaintiffs may sue for relief under the IDEA. *T.B.*, 980 F.3d at 1051 (citing 20 U.S.C. § 1415(e) and (*l*)). These procedures include "an 'impartial due process hearing' conducted by a state or local educational agency, as provided by state law."

*D.G.*, 806 F.3d at 312 (quoting 20 U.S.C. § 1415(f)(1)(A), (f)(B)(ii)). A "'party aggrieved by the findings and decision made' in an IDEA due process hearing" has the right to file a civil action. *Id.* at 317 (quoting 20 U.S.C. § 1415(i)(2)(A)). Here, the district court found that "[t]hough R.W. may be aggrieved by CCISD's failure to implement that decision, he is not a 'party aggrieved by the findings and decision' of a hearing officer."

We have not yet squarely addressed whether § 1415(i)(2)(A) permits a claim for failure to implement a favorable decision of a hearing officer. The circuits that have considered this issue are split. *Compare B.D. v. District of Columbia*, 817 F.3d 792, 801 (D.C. Cir. 2016) (finding that the statutory text of the IDEA does not support a failure-to-implement claim), *Antkowiak v. Ambach*, 838 F.2d 635, 637 (2d Cir. 1988), *and Robinson v. Pinderhughes*, 810 F.2d 1270, 1272 (4th Cir. 1987), *with D.E. v. Cent. Dauphin Sch. Dist.*, 765 F.3d 260, 276–78 (3d Cir. 2014) (citing *Nieves-Marquez v. Puerto Rico*, 353 F.3d 108, 115–17 (1st Cir. 2003)) (concluding, based on legislative intent and statutory purpose, that Congress "could not have intended to leave plaintiffs without an IDEA statutory remedy" for situations like this one).[1]

We have, however, previously considered the meaning of "party aggrieved" in § 1415(i)(2)(A) in deciding whether the limitations period in § 1415(i)(2)(B) applies to distinct civil actions under § 1415(i)(3)(B) for attorney's fees by prevailing parties. *See D.G.,* 806 F.3d at 315–19. We concluded that "[t]he most natural reading of § 1415(i)(2)(B), then, is that it

---

[1] In dicta, the Ninth and Tenth Circuits have also stated that parties may sue under the IDEA for failure to implement favorable decisions. *See Porter v. Bd. of Trs. of Manhattan Beach Unified Sch. Dist.*, 307 F.3d 1064, 1069–70 (9th Cir. 2002) (stating that a failure to implement a hearing officer's orders is a "violation of the IDEA" that could be brought to court); *Miller ex rel. S.M. v. Bd. of Educ. of Albuquerque Pub. Schs.*, 565 F.3d 1232, 1243 (10th Cir. 2009) (stating that if the school district refused to comply, the plaintiff could "return to court to enforce the awarded relief").

applies only to actions described in the immediately preceding § 1415(i)(2)(A)—*those filed by parties 'aggrieved by' the administrative decision"* of the hearing officer. *Id.* at 317 (emphasis added). In concluding that § 1415(i)(2)(A) only applies to actions filed by parties "aggrieved by" the hearing officer's decision, we sided with those circuits holding that parties who receive all relief they sought in an IDEA administrative hearing are not "aggrieved":

> Contrary to the district court's compressed analysis, it makes little sense to characterize a party as "aggrieved by" the decision of a hearing officer that awarded that party all of the relief she sought, merely because the hearing officer did not order the payment of attorneys' fees that he had no authority to award. *See Antkowiak v. Ambach,* 838 F.2d 635, 641 (2d Cir. 1988) (noting that parents who "received precisely the relief they sought from the hearing officer" could not seek judicial review as parties aggrieved under the IDEA's predecessor); *Robinson v. Pinderhughes,* 810 F.2d 1270, 1273 (4th Cir. 1987) ("Access to the courts [under former § 1415(e)(2)] is provided only to review *adverse administrative orders,* i.e. to the 'party aggrieved.'" (emphasis added)). As one court has noted, that characterization "is contradictory—a party cannot have been 'aggrieved' and be said to have 'prevailed' in the same action where there was only one outcome. One term clearly connotes loss while the other indicates victory." *P.M. ex rel. S.M. v. Evans–Brant Cent. Sch. Dist.,* No. 09–CV–686S, 2012 WL 42248, at *4 (W.D.N.Y. Jan. 9, 2012). NCISD does not explain why Congress would have intended "party aggrieved" to encompass such a counterintuitive meaning in this statute. We thus conclude that § 1415(i)(2)(B) applies only to actions brought by aggrieved parties seeking judicial review of adverse administrative decisions[.]

*D.G.,* 806 F.3d at 317–18 (citation omitted).

No. 24-40141

We need not decide whether this language in *D.G.* is dicta. *See In re Ultra Petroleum Corp.*, 28 F.4th 629, 639 (5th Cir. 2022) (noting that a statement is not dicta "if it is necessary to the result" (internal quotation marks and citation omitted)). We agree with its analysis and see no reason to reach a different result. Because the hearing officer awarded R.W. all the relief he sought, he is not an "aggrieved" party who may sue under § 1415(i)(2)(A). The district court did not err by dismissing his IDEA claim.

IV

R.W. argues that the district court erred in dismissing his § 1983 claim because, by delegating implementation of the hearing officer's decision to the same school officials who had violated his rights, the school board ratified the school officials' misconduct.

A school district may be held liable under 42 U.S.C. § 1983 for violating a student's constitutional rights. *See Littell v. Houston Indep. Sch. Dist.*, 894 F.3d 616, 622 (5th Cir. 2018) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). A *Monell* claim requires proof of three elements: (1) a policymaker, (2) an official policy, and (3) "'a violation of constitutional rights whose "moving force" is the policy or custom.'" *Doe v. Edgewood Indep. Sch. Dist.*, 964 F.3d 351, 364–65 (5th Cir. 2020) (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)). Here, the district court found that R.W. had adequately identified a policymaker[2] as well as an official policy of entrusting implementation of the hearing officer's decision to the school officials who had previously violated his rights, but even taking his

---

[2] "'[T]he identification of policymaking officials is a question of state law.'" *Longoria Next Friend of M.L. v. San Benito Indep. Consol. Sch. Dist.*, 942 F.3d 258, 271 (5th Cir. 2019) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124 (1988)). In Texas, a school board is a school district's policymaker. *See id.* (citing Tex. Educ. Code § 11.151(b)).

allegations as true, the school board's conduct fell short of ratifying any underlying misconduct.

"'The "official policy" requirement was intended to distinguish acts of the [school district] from acts of [its] *employees*[.]'" *Id.* (quoting *Pembauer v. Cincinnati*, 475 U.S. 469, 479 (1986)). A school district cannot be held liable under § 1983 based on a theory of *respondeat superior*. *Id.* at 365 (citing *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997)). To establish the third element of a *Monell* claim, a plaintiff must "establish both the causal link ('moving force')" between the official policy and the constitutional violation as well as "the requisite degree of culpability ('deliberate indifference' to federally protected rights)." *Snyder v. Trepagnier*, 142 F.3d 791, 796 (5th Cir. 1998) (quoting *Brown*, 520 U.S. at 415); *see also Edgewood Indep. Sch. Dist.*, 964 F.3d at 365 ("[A] plaintiff must show that the district's final policymaker acted with deliberate indifference in maintaining an unconstitutional policy that caused the plaintiff's injury." (citing *Brown*, 520 U.S. at 403)). We have previously stressed that both culpability and causation are "rigorous requirements." *Snyder*, 142 F.3d at 796 (quoting *Brown*, 520 U.S. at 415). "'[P]laintiffs must offer evidence of not simply a decision, but a "decision by the [school district] itself to violate the Constitution."'" *Id.* (quoting *Gonzalez v. Ysleta Indep. Sch. Dist.*, 996 F.2d 745, 759 (5th Cir. 1993) (finding that a school board did not act with deliberate indifference to students' rights when it failed to remove a teacher accused of fondling students)).

Here, R.W. alleges that the school board should have known that the school officials would likely fail to implement the hearing officer's decision because it required them to remedy their own violations of his rights. He has not sufficiently pleaded facts showing that it acted with deliberate indifference. The district court did not err in dismissing his § 1983 claim.

No. 24-40141

V

Finally, R.W. argues that the district court erroneously dismissed his claims under § 504 of the Rehabilitation Act because his allegations regarding CCISD's "blatant disregard" for the hearing officer's decision and additional "acts and omissions" alleged a sufficient degree of intentional discrimination.[3]

To establish a prima facie claim for disability-based discrimination under § 504, a plaintiff must allege "(1) that he is a qualified individual . . . ; (2) that he is being excluded from participation in, or being denied benefits of, services, programs, or activities for which the public entity is responsible, or is otherwise being discriminated against by the public entity; and (3) that such exclusion, denial of benefits, or discrimination is by reason of his disability. *J.W. v. Paley*, 81 F.4th 440, 449 (5th Cir. 2023), *cert. denied*, 144 S. Ct. 2658 (2024) (quoting *T.O. v. Fort Bend Indep. Sch. Dist.*, 2 F.4th 407, 417 (5th Cir. 2021) (alteration in original)). To recover damages under § 504, a showing of intentional discrimination is required. *Id.* (citing *Delano-Pyle v. Victoria Cnty.*, 302 F.3d 567, 574 (5th Cir. 2002)). "While we have not 'delineate[d] the precise contours' of this intentionality requirement, our 'cases to have touched on the issue require something more than deliberate indifference.'" *Id.* at 450. "Intentional-discrimination liability requires proof that the 'school district has *refused* to provide reasonable accommodations for the handicapped plaintiff to receive the full benefits of the school

_____

[3] CCISD contends that R.W. failed to first exhaust his administrative remedies under the IDEA for any claims arising after the hearing officer's decision of November 22, 2022, as required for purposes of his § 504 claim. Because we're interpreting R.W.'s request for "[r]eimbursement for costs and expenses incurred as a result of Defendant's wrongdoing" as seeking compensatory damages, which are not available under the IDEA, his § 504 claim is not subject to its exhaustion requirement. *See J.W. v. Paley*, 81 F.4th 440, 448 (5th Cir. 2023) (citing *Perez v. Sturgis Pub. Schs.*, 598 U.S. 142, 147–48 (2023)).

program.'" *Doe v. Columbia-Brazoria Indep. Sch. Dist.*, 855 F.3d 681, 690 (5th Cir. 2017) (quoting *D.A. ex rel. Latasha A. v. Houston Indep. Sch. Dist.*, 629 F.3d 450, 454 (5th Cir. 2010)).

R.W. claims that in addition to CCISD's "blatant disregard" for the hearing officer's decision, it also failed to provide him with a primary paraprofessional, shut down its lines of communication with his parents, and failed to take measures or even communicate with his parents after he suffered physical harm on campus. His allegations do not rise to the level of "something more than deliberate indifference," however. They reflect his disagreement with the specific accommodations CCISD provided him, not a refusal to provide him accommodations. The district court did not err in finding that he failed to state a claim under § 504.

## VI

The district court's judgment is AFFIRMED.