RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 14a0223p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

F. H., by his next friend Sandra Fay Hall; SANDRA
FAY HALL,

                       *Plaintiffs-Appellants*,

        *v.*

MEMPHIS CITY SCHOOLS; VINCENT HUNTER;
WALTER BANKS; MALICA JOHNSON; PATRICIA A.
TOARMINA; PAT BEANE,

                       *Defendants-Appellees*.

No. 13-6323

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 2:12-cv-02312—John Thomas Fowlkes, Jr., District Judge.

Argued: June 26, 2014

Decided and Filed:  September 4, 2014

Before:  MOORE and KETHLEDGE, Circuit Judges; TARNOW, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Craig P. Barnes, MEMPHIS AREA LEGAL SERVICES, INC., Memphis, Tennessee, for Appellants.  Christopher S. Campbell, HARRIS SHELTON HANOVER WALSH, PLLC, Memphis, Tennessee, for Appellees. Judith A. Gran, REISMAN CAROLLA REISMAN & GRAN, Haddonfield, New Jersey, for Amicus Curiae.  **ON BRIEF:** Craig P. Barnes, Frank S. Cantrell, MEMPHIS AREA LEGAL SERVICES, INC., Memphis, Tennessee, for Appellants.  Christopher S. Campbell, HARRIS SHELTON HANOVER WALSH, PLLC, Memphis, Tennessee, for Appellees. Judith A. Gran, REISMAN CAROLLA REISMAN & GRAN, Haddonfield, New Jersey, for Amicus Curiae.

       TARNOW, D.J., delivered the opinion of the court, in which MOORE and KETHLEDGE, JJ., joined.  KETHLEDGE, J. (pg. 10), delivered a separate concurring opinion.

---

[*] The Honorable Arthur J. Tarnow, Senior United States District Judge for the Eastern District of Michigan, sitting by designation.

_____

**OPINION**

_____

TARNOW, District Judge.  Plaintiffs-Appellants F.H., represented by his next friend and mother Sandra Fay Hall, and Sandra Fay Hall individually, filed suit against Defendant-Appellee Memphis City Schools (MCS) alleging Appellee allowed for the abuse and neglect of F.H. while enrolled in its schools, and allege Appellee breached a Settlement Agreement.  The district court granted Appellee's motion to dismiss all claims, finding that Appellants' claims accruing prior to the Settlement Agreement were barred by this Agreement, and that all other claims required exhaustion under the Individuals with Disabilities Education Act (IDEA).  Appellants now appeal the district court's dismissal of the 42 U.S.C. § 1983 and the breach of contract claims.

We find that Appellants' § 1983  claims do not arise under the IDEA, were not released by the Settlement Agreement, and that the administrative exhaustion of these claims would be futile. We also find that the language of the Settlement Agreement, as well as the 2004 Amendments to the IDEA, render the Settlement Agreement enforceable in the courts, and therefore, that the breach of contract claim does not require administrative exhaustion.  As such, we reverse the district court's dismissal of Appellants' Amended Complaint, and remand for further proceedings consistent with this opinion.

## I.  Statement of Facts

F.H. was born on August 29, 1994.  He was diagnosed with cerebral palsy syndrome as an infant.  F.H. has also been diagnosed with asthma, and sleep apnea.  F.H. has auditory and visual limitations and significant learning disorders.  F.H. has needed a wheelchair or walker since he was a small child.  F.H. also has limited use of his hands, which makes it difficult for him to reach around himself, and to use the bathroom without assistance.

F.H. began attending Appellee MCS schools in 2002.  During his enrollment in MCS, Ms. Hall informed the staff of F.H.'s disabilities and specific needs. From 2002 until 2010, F.H. attended four different schools and had eleven different aides assigned to him to render assistance throughout

the school day, including to supervise and assist F.H. when using the restroom. Appellant F.H. remained enrolled in MCS until his graduation in May 2013.

Appellants' Amended Complaint makes a litany of specific allegations of physical, sexual, and verbal abuse of F.H. by MCS aides over the course of F.H.'s enrollment in MCS. Appellants highlight the following allegations:

> (1) Being frequently left unattended and unsupervised in the bathroom, distraught and crying, unable to clean himself; And in one case he suffered a seizure;
> (2) Verbal and physical abuse, on multiple occasions from different aides and school personnel, allowing him to return from the bathroom, in one case, with bloody underwear;
> (3) Being ridiculed about his disability (cerebral palsy) and told that he would, "never amount to anything;" until F.H. screamed and banged his head against the wall in frustration;
> (4) Aides and school employees regularly failing to help F.H. clean himself, so that he returned to class with dirty underwear, and on at least one occasion an aide announced to the class that F.H. smelled like "shit;"
> (5) Being sexual abused by an aide on more than one occasion while in a private bathroom.

## II. Procedural Background

As the local education agency (LEA), the IDEA requires that MCS create an Individualized Education Plan (IEP) for F.H. and other disabled students. *See Forest Grove Sch. Dist. v. T. A.*, 557 U.S. 230, 232 (2009). The IDEA guarantees these children a Free Appropriate Public Education (FAPE) in conformity with the IEP. *See Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516, 520 (2007); *Amy S. v. Danbury Local Sch. Dist.*, 174 Fed. Appx. 896, 898 n.4 (6th Cir. 2006). The IDEA also provides specific procedural recourse should an involved party object to the construction or implementation of the IEP. *Winkelman*, 550 U.S. at 524–25.

In April of 2011, Ms. Hall initiated this process by filing a request for a due process hearing on behalf of F.H. Under IDEA, within 15 days of a request for a due process hearing, the parents, members of the IEP team, and a representative of the LEA are required to participate in a resolution session, giving the LEA an opportunity to resolve the complaint. 20 U.S.C. § 1415(f)(1)(B)(i).

On May 2, 2011, Ms. Hall met with representatives from MCS for a resolution session. During the resolution session, the parties reached a tentative settlement. On August 9, 2011, Ms. Hall and a representative of MCS signed a finalized Settlement Agreement. This Settlement Agreement includes the following terms:

> Student and his Parent, and each of them, on behalf of themselves . . . hereby fully and forever release and discharge the District . . . from any and all claims . . . arising under the IDEA and concomitant provisions of STATE law enacted in compliance therewith, including, but not limited to, any matter or claim which was, or could have been, asserted in the Due Process Proceeding, by reason of any matter, cause or thing whatsoever occurred, done, omitted, or suffered to be done on or before the last day of the Settled Period, which Student and his Parent, or any of them, now owns or holds, or may at any time hereafter own or hold.
>
> . . . .
>
> The releases set forth above do not apply to any disputes that may arise by reason of acts or omissions occurring after the date of execution of this Agreement. It is understood that no aspect of this Agreement shall release, (or is intended to release or waive any right or remedy against) any Part from liability for any post-Agreement new wrongful acts or omissions, including independent torts, unrelated to the provisions of this Agreement.

This Agreement was reached at a Resolution Session and is enforceable in state or federal court pursuant to 20 U.S.C. § 1415(f)(1)(B)(iii).

On April 23, 2012, Appellants filed a Complaint against Appellees in the Western District Court of Tennessee, which they amended in July 2013. In the Amended Complaint, Appellants alleged that Defendants violated 42 U.S.C. § 1983 under the Fourteenth Amendment of the United States Constitution, the Rehabilitation Act (Section 504), and the Americans with Disabilities Act (ADA). Appellants also made claims of retaliation under the ADA and Section 504, as well as breach of the Settlement Agreement.

In August 2012, Appellees filed a motion to dismiss the Amended Complaint. In February 2013, the district judge referred Appellees' motion to dismiss to the magistrate judge. On April 24, 2013, the magistrate judge issued her Report and Recommendation, recommending dismissal of all claims. On August 12, 2013, the district court entered an Order adopting the Report and Recommendation in its entirety, and issued a final Judgment.

On October 8, 2013, Appellants filed a timely Notice of Appeal. Appellants now appeal the district court's dismissal of Appellants' 42 U.S.C. § 1983 claims, the breach of contract claim, and all related issues of exhaustion.

On April 25, 2014, an Amicus Brief was submitted by the Council of Parent Attorneys and Advocates (COPAA), Disability Law and Advocacy Center of Tennessee (DLAC), The ARC Tennessee (The ARC TN), Tennessee Alliance for Legal Services (TALS), Support and Training for Exceptional Parents (STEP), Tennessee Voices for Children, Inc. (TVC), and People First of Tennessee (People First).

### III. Standard of Review

We review de novo a dismissal of a case for failure to state a claim. *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). The complaint must contain factual allegations that, when accepted as true, "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must include "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### IV. Analysis

#### A. 42 U.S.C. § 1983 Claim

The district court found that the Settlement Agreement bars Appellants' claims that accrued from 2002 to August 9, 2011, and that all claims accruing after the parties entered into the Settlement Agreement require administrative exhaustion under the IDEA. The district court erred with respect to the § 1983 claims accruing both before and after the execution of the Settlement Agreement.

First, the district court erred by concluding that Appellants released their claims accruing prior to August 9, 2011. In the Settlement Agreement, Appellants agreed to release all claims "arising under the IDEA and concomitant provisions of STATE law enacted in compliance therewith, including, but not limited to, any matter or claim which was, or could have been, asserted in the Due Process Proceeding." However, in the Amended Complaint, Appellants claim that Appellee MCS engaged in a policy or custom of failing adequately to train or supervise F.H.'s aides

and other employees and that MCS knew of or should have known of the abusive behavior towards F.H., including numerous acts of verbal and physical abuse.  Appellants' factual allegations clearly point to physical, non-disciplinary, and non-educational injuries, which cannot be redressed by any remedy available under the IDEA.  *See, e.g.*, *Padilla v. Sch. Dist. No. 1*, 233 F.3d 1268, 1274 (10th Cir. 2000); *Lopez v. Metro. Gov't of Nashville & Davidson Cnty.*, 646 F. Supp. 2d 891, 908 (M.D. Tenn. 2009); *M.Y. v. Special Sch. Dist. No. 1*, 519 F. Supp. 2d 995, 1002 (D. Minn. 2007).  Thus, Appellants' § 1983 claims do not "aris[e] under the IDEA," and were not released by the Settlement Agreement.

Second, the district court erred by concluding that Appellants should have exhausted their § 1983 claims through the IDEA administrative process before bringing them in federal court.  In relevant part, the IDEA provides that:

> Nothing in [the IDEA] shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution . . . or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under [the IDEA], the [IDEA due process] procedures . . . shall be exhausted to the same extent as would be required had the action been brought under [the IDEA].

20 U.S.C. § 1415(*l*).  Appellants are not excused from exhaustion merely because they request compensatory damages under § 1983.  *Covington v. Knox Cnty. Sch. Sys.*, 205 F.3d 912, 918 (6th Cir. 2000) ("[A] plaintiff seeking money damages is required to exhaust administrative remedies under the IDEA, even if money damages are not available under the IDEA or through the administrative process.").

Appellees argue that exhaustion of Appellants' 42 U.S.C. § 1983 claims is required because the claims seek redress for educational injuries that arise under the IDEA, which may be redressed by the administrative process until the child turns twenty-one under Tennessee law.  Tenn. Code Ann. § 49-10-102.  Because F.H. had not graduated at the time the complaint was filed, and because he is not yet twenty-one, Appellees assert that compensatory education is an available and sufficient remedy.

We are not persuaded that Appellants' alleged injuries under the 42 U.S.C. § 1983 claims relate to the provision of a FAPE.  As we discussed above, Appellants allege that F.H. was verbally, physically, and even sexually abused by his aides.  These injuries are non-educational in nature and cannot be remedied through the administrative process.  Moreover, requiring exhaustion of Appellants' 42 U.S.C. § 1983 claims would create an additional administrative barrier not present for non-disabled children.  *See Sagan v. Sumner Cnty. Bd. of Educ.*, 726 F. Supp. 2d 868, 882–83 (M.D. Tenn. 2010) ("The Court construes these claims as arising from non-educational injuries, irrespective of the fact they occurred in an educational setting and were allegedly perpetrated by educators against a student.  If Jane Doe were *not* a disabled student, there would be no administrative barrier to her pursuit of these claims.").  Therefore, Appellants are not required to exhaust their § 1983 claims related to non-educational injuries.

Moreover, "[e]xhaustion is not required if it would be futile or inadequate to protect the plaintiff's rights."  *Covington*, 205 F.3d at 917.  In *Covington*, we specifically found that "in the unique circumstances of this case—in which the injured child has already graduated from the special education school, his injuries are wholly in the past, and therefore money damages are the only remedy that can make him whole—proceeding through the state's administrative process would be futile and is not required before the plaintiff can file suit in federal court."  *Id*.  F.H. has graduated and seeks compensation for injuries suffered at the hands of his abusive aides.  The administrative process cannot provide either the type of relief he seeks or any other type of remedy to redress wholly retrospective injuries.  Thus, exhaustion in this case would be futile.

Accordingly, we conclude that the district court erred by dismissing Appellants' 42 U.S.C. § 1983 claims.

## B.  Breach of Contract Claim

The district court also dismissed the breach of contract claim for failure to exhaust. Appellants argue that exhaustion is unnecessary because the clear terms of both the Settlement Agreement and the 2004 Amendments to the IDEA render the Settlement Agreement directly enforceable in the courts.

We have held that "§ 1415(i)(2) [of the IDEA] clearly contemplates that plaintiffs will exhaust their administrative remedies before bringing a civil action to enforce their rights under the IDEA." *Covington*, 205 F.3d at 915.  However, the question of whether a claim of breach of a settlement agreement must be exhausted prior to filing suit is one of first impression.  In relevant part, the 2004 Amendments to the IDEA provide that, "[i]n the case that a resolution is reached to resolve the complaint at a [resolution session], the parties shall execute a legally binding agreement that is . . . enforceable in any State court of competent jurisdiction or in a district court of the United States." 20 U.S.C. § 1415(f)(1)(B)(iii).

Appellees argue that the parties did not finalize the settlement agreement "at" the resolution session, rendering the 2004 Amendments inapplicable.  They highlight the ninety-seven day gap between the May 2, 2011 resolution session and the August 9, 2011 signing of the finalized Settlement Agreement, and argue that if an agreement is made during a resolution session, it must be finalized within thirty days of the session.  Appellees base this argument on the provision of the IDEA allowing a parent to continue with the due process hearing should a LEA fail to resolve a complaint within thirty days of its receipt. 20 U.S.C. §1415(f)(10(B)(ii).  However, this section of the IDEA is clearly inapplicable here, and does not limit the amount of time the parties may take to finalize an agreement reached during the resolution session.

Appellees also argue that the Settlement Agreement was not reached "at" a resolution session based on one term of the Agreement that Appellees allege could not have been known at the time of the session.  Specifically, paragraph 1.3 of the Settlement Agreement provides that Willie Boone will act as F.H.'s aide for the 2011-2012 school year, even though Boone was not hired until after the resolution session.  However, it is not dispositive that the contract incorporates some information learned by the parties after the resolution session because agreements reached during a meeting are often refined and finalized long after the meeting concludes.  Indeed, requiring that a settlement agreement be written, finalized, and signed during a settlement conference would be counter to the usual practice.

Ultimately, this question is answered by the terms of the Settlement Agreement itself.  Appellees agreed to a provision in the Settlement Agreement that clearly states that "[t]his Agreement was reached at a Resolution Session and is enforceable in state or federal court pursuant

to 20 U.S.C. § 1415(f)(1)(B)(iii)." This contract provision, bargained for and agreed to by both parties, controls here. As such, we find that the language of the Settlement Agreement, as well as the 2004 amendments to the IDEA, clearly provide that the Settlement agreement is enforceable in the courts, and therefore, that the breach of contract claim does not require administrative exhaustion.

## V.  Conclusion

The gravamen of Appellants' complaint is the verbal, physical, and even sexual abuse of F.H. by his aides. These factual allegations point to non-educational injuries that have no available remedy under the IDEA. As such, we find that Appellants' § 1983 claims do not arise under the IDEA, and therefore, were not released by the Settlement Agreement. For the same reason, we also find that the administrative exhaustion of these claims would be futile. Finally, we find that the language of the Settlement Agreement, as well as the 2004 Amendments to the IDEA, render the Settlement Agreement enforceable in the courts, and thus, that the breach of contract claim does not require administrative exhaustion. Accordingly, we reverse the district court's dismissal of Appellants' Amended Complaint, and remand for further proceedings consistent with this opinion.

––––––––––––––––––

**CONCURRENCE**

––––––––––––––––––

KETHLEDGE, Circuit Judge, concurring.  Not every injury inflicted within a school building is "educational."  Here, F.H.'s allegations in support of his § 1983 claim included the following: that the aides who were supposed to clean him after he used the restroom (F.H. has cerebral palsy) instead often left him there unattended, including on one occasion when he suffered a seizure; that the aides who did accompany him to the restroom routinely refused to clean him, which caused him to return to class with feces in his underwear, which in turn subjected him to ridicule from students and teachers alike; that on one occasion an aide ridiculed F.H. until he banged his head against the bathroom wall in frustration; that on another occasion an aide refused to assist F.H. and sent him back to class with bloody underwear; and that one aide sexually abused him "while in a private bathroom."

To characterize F.H.'s injuries as "educational" is to belittle them.  The gravamen of his claim is not that the conduct described in his complaint might reduce his SAT scores.  The gravamen of his claim, rather, is that this conduct was an attack upon F.H.'s dignity as a human being.  That injury was not remediable by some change to F.H.'s "Individualized Education Plan."  Nor was it by a mere promise not to let these things happen again.  The remedy for F.H.'s injury, therefore, lay not in "the IDEA's administrative procedures[.]"  *S.E. v. Grant Bd. Of Educ.*, 544 F.3d 633, 642 (6th Cir. 2008).  Instead his remedy lies in federal court, where F.H. can obtain not only compensation for his injuries, but recognition of what they actually were.