RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 26a0142p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────

IBRAHIM ALZANDANI,

                                *Plaintiff*,

Y.A., a minor by Next Friend Ibrahim Alzandani;
W.A., a minor by Next Friend Nadhem Alnajar; A.M.,
a minor by Next Friend Abraham Muzib,

                     *Plaintiffs-Appellees*,

    *v.*

HAMTRAMCK PUBLIC SCHOOLS (25-1603); MICHIGAN
DEPARTMENT OF EDUCATION (25-1602); WAYNE
COUNTY REGIONAL EDUCATIONAL SERVICE AGENCY
(25-1601),

                     *Defendants-Appellants*.

> Nos. 25-1601/1602/1603

─────────────

Appeal from the United States District Court for the Eastern District of Michigan at Detroit.
No. 2:23-cv-12817—Brandy R. McMillion, District Judge.

Argued: March 3, 2026

Decided and Filed: May 12, 2026

Before: SUTTON, Chief Judge; BATCHELDER and RITZ, Circuit Judges.

─────────────

## COUNSEL

**ARGUED:** Stephen J. van Stempvoort, MILLER JOHNSON, Detroit, Michigan, for Appellant Wayne County Regional Educational Service Agency. Kathleen A. Halloran, MICHIGAN DEPARTMENT OF THE ATTORNEY GENERAL, Lansing, Michigan, for Appellant Michigan Department of Education. Robert A. Dietzel, THRUN LAW FIRM, P.C., East Lansing, Michigan, for Appellant Hamtramck Public Schools. Tarik D. Turfe, HAMMOUD, DAKHLALLAH & ASSOCIATES, PLLC, Dearborn, Michigan, for Appellees. **ON BRIEF:** Stephen J. van Stempvoort, Kevin T. Sutton, Brandon S. Corcoran, MILLER JOHNSON, Detroit, Michigan, for Appellant Wayne County Regional Educational Service Agency.

Kathleen A. Halloran, Ticara D. Hendley, Neil A. Giovanatti, Marissa Wiesen, MICHIGAN DEPARTMENT OF THE ATTORNEY GENERAL, Lansing, Michigan, for Appellant Michigan Department of Education.  Robert A. Dietzel, Kelly S. Bowman, THRUN LAW FIRM, P.C., East Lansing, Michigan, for Appellant Hamtramck Public Schools.  Tarik D. Turfe, Kassem M. Dakhlallah, HAMMOUD, DAKHLALLAH & ASSOCIATES, PLLC, Dearborn, Michigan, for Appellees.    Selene Almazan-Altobelli, COUNCIL OF PARENT ATTORNEYS AND ADVOCATES, INC., Towson, Maryland, for Amici Curiae.

SUTTON, C.J., delivered the opinion of the court in which BATCHELDER, J., concurred and RITZ, J., concurred in the judgment.  RITZ, J. (pp. 18–21), delivered a separate concurring opinion.

---

**OPINION**

---

SUTTON, Chief Judge.  A group of Michigan parents alleges that a local public school district denied their children access to special-education services.  The parents, as a result, filed this lawsuit under several federal laws, including the Individuals with Disabilities Education Act, what's come to be called the IDEA for short.  The IDEA establishes an administrative hearing process for parents and school districts to resolve special-education disputes.  At the end of that process, it allows parents to sue in federal court if they are "aggrieved by the findings and decision" of the administrative hearing officer.  20 U.S.C. § 1415(i)(2)(A).  Even though the parents in this case never pursued an administrative hearing—the process that creates their cause of action—they nonetheless claim a right to bring this lawsuit.  We disagree and reverse the district court's contrary determination.

I.

This is a motion-to-dismiss sequel.  In an interlocutory appeal in this case last year, we held that the Americans with Disabilities Act does not abrogate Michigan's sovereign immunity.  *Y.A. ex rel. Alzandani v. Hamtramck Pub. Schs.*, 137 F.4th 862, 870 (6th Cir. 2025).  While this new appeal involves a different issue and a different statute, the underlying facts remain the same.

The City of Hamtramck, a 2.09-square-mile enclave of Detroit, oversees eight public schools for about 2,900 students.  The city and its school district face several challenges.  Nearly half of the City's residents were born abroad, and a majority of its students speak Arabic or Bengali at home.  Eight of ten students are below grade level in English, Mathematics, and Social Studies.  Seven in ten receive free school meals.  Five in ten live in poverty.  Two in ten graduate late or not at all.  And roughly one in ten requires special education due to a physical or intellectual disability.

In 2021, a dispute between the district and its superintendent exacerbated these challenges.  The dispute prompted over 30 teachers and other staff members to resign, leaving a district that typically employs around 200 teachers quite understaffed.

In 2023, three parents filed this action, each alleging that Hamtramck failed to "make good on its promise of an education 'specially designed' to meet their child's 'unique needs'" under the IDEA.  *Id.* at 866 (quoting 20 U.S.C. § 1401(29)).  The first claimant, Ibrahim Alzandani, is the father of Y.A., a seven-year-old boy with autism.  Even though Hamtramck tried to provide a full-time aide to accompany Y.A. at school, the complaint alleges, the assigned aide spent only a few hours a day with him.  Y.A. thus spent "most of the first grade at home, unable to attend school."  *Id.*

The second parent, Nadheem Alnajar, "tells a similar story" about W.A., his nine-year-old son who has autism.  *Id.*  Hamtramck promised to provide W.A. with speech therapy and other services, but the promises went unmet.  W.A. "was routinely sent home after just one or two hours at school, and sometimes placed in seclusion for students with 'problem behaviors.'"  *Id.*

The third parent, Abraham Muzib, says Hamtramck told him that the school district does "not provide services to children with Down syndrome" and refused to evaluate his five-year-old daughter, A.M., for assistance.  *Id.* (quotation omitted).

Two of the parents initially turned to the State for help.  "A special advocate filed complaints on behalf of Alzandani and Muzib with Michigan's Department of Education," and the department ruled that the school district violated each child's "right to receive a free and

appropriate public education" under the IDEA. *Id.* In both cases, "the department put in place a corrective-action plan with backward-looking and forward-looking components." *Id.* None of the parents, however, pursued the "due process complaint process" created by the IDEA. R.67 at 9.

The children and parents instead sued the school district, the county education agency, and the State in this putative class action. They claim that the defendants violated the IDEA as well as the Americans with Disabilities Act, the Rehabilitation Act, and Michigan law. They seek damages under the latter two federal statutes. And they seek an injunction under all three federal statutes that would identify "an expert group" to provide "corrective measures" and a special monitor "to oversee [their] implementation." R.46 ¶ 271.

The defendants moved to dismiss. They argued that the parents failed to exhaust the IDEA's administrative remedies, which apply to all three laws. 20 U.S.C. § 1415(*l*). The district court denied their motion, reasoning that the exhaustion requirement does not apply to "systemic" failures by a school district—such as the inadequate resources and staffing alleged here—to comply with the IDEA. R.67 at 16. The district court certified the issue for immediate appeal, and we agreed to hear the appeal. *In re Hamtramck Pub. Schs.*, order at 3–4, No. 24-0108 (6th Cir. July 3, 2025).

II.

The IDEA "ensures that children with disabilities receive needed special education services." *Fry v. Napoleon Cmty. Schs.*, 580 U.S. 154, 157 (2017). The Act fulfills this goal by "offer[ing] federal funds to States in exchange for a commitment" to provide a "free appropriate public education" to "all children with certain physical or intellectual disabilities." *Id.* at 158 (quotation omitted).

The "primary vehicle" for delivering on that promise to each child is an "individualized education program." *Id.*; *accord* 20 U.S.C. § 1414(d). As the name suggests, these plans identify the "special education and related services" that a school must provide to each eligible student to meet his or her personalized "educational needs." 20 U.S.C. § 1414(d)(1)(A)(i)(II)(bb), (IV). The creation of an individualized educational program brings

together the key stakeholders.  It requires the parents of each eligible student to work with teachers, school officials, and other professionals to craft a program that fits that child's special-education needs.  *Id.* § 1414(d)(1)(B).

Congress recognized that parents and teachers do not always see eye-to-eye when it comes to accommodating a student with disabilities.  "Toward that end, the law sets forth a number of administrative procedures for children, their parents, teachers, and school districts to follow when disputes arise."  *Luna Perez v. Sturgis Pub. Schs.*, 598 U.S. 142, 144 (2023).

The parties share common ground over how these procedures work in a typical IDEA dispute.  If a parent thinks that a school has fallen short in providing his child a free and appropriate public education—by failing, for example, to implement the child's individualized education program—the parent may file a "due process complaint" with the state education department.  20 U.S.C. § 1415(b)(6)–(7), (o).  When faced with a due process complaint, a school district must meet with the child's parents to discuss their concerns and to try to work out an informal solution.  *Id.* § 1415(f)(B)(i).  If they do not reach an agreement, either party may request mediation.  *Id.* § 1415(e).

If that doesn't work, the IDEA entitles the parents to a "due process hearing" before an impartial hearing officer.  *Id.* § 1415(f)(1)(B)(i), (f)(3)(A).  The hearing officer decides whether the school has provided the student with a "free appropriate public education" and, if not, the hearing officer may issue findings and a decision requiring the school to comply with the IDEA's requirements.  *Id.* § 1415(f)(3)(E).  Parents disappointed by this hearing may appeal the ruling to the state education agency.  *Id.* § 1415(g)(1); *Fry*, 580 U.S. at 159.  If the parents remain dissatisfied with the outcome of this process, the IDEA permits them to file a complaint in federal court.

As this sequence of steps illustrates, it is only after the completion of this process—after the school in the parents' eyes still denies their child a free and appropriate education—that the statute creates a right of action that the parents may file in federal court.  The requirement of a free and appropriate education "provides the yardstick for measuring the adequacy of the education that a school offers to a child with a disability."  *Fry*, 580 U.S. at 167.  The point of the

statute's "administrative procedures" is to "test whether a school has met that obligation," which is why the process "center[s]" on the Act's requirement of a free and appropriate education. *Id.* In the words of the statute, the parent has a "right to bring a civil action" only if he or she is "aggrieved by the findings and decision" of a due process hearing, namely findings and a decision that in one way or another deny the child a free and appropriate education. 20 U.S.C. § 1415(i)(2)(A). The existence of a due process hearing "decision" thus is the necessary preamble of a lawsuit brought under the IDEA. Without the injury created by a failed due process hearing, no cause of action under the IDEA exists.

There is method to the IDEA's unique approach to conflict resolution. After the filing of an administrative complaint, the IDEA requires the child's parents and teachers to meet with school officials and special-education experts familiar with the child. *Id.* §§ 1414(d)(1)(B), 1415(f)(1)(B)(i). When appropriate, the child may join them as well. *Id.* § 1414(d)(1)(B)(vii). If the parents decide not to bring an attorney, the school employees may not bring one either. *Id.* § 1415(f)(1)(B)(i)(III). The meeting thus is not adversarial. The goal is to bring all interested parties together to find the right fix for the child's special-education needs and to "resolve" the parents' complaint. *Id.* § 1415(f)(1)(B)(i)(IV). While later steps in the administrative process become increasingly formal, this same basic goal animates the entire process, including (if necessary) the due process hearing.

Confirming the centrality of this administrative process to achieving the statute's goals, the IDEA requires parents to go through it even when they bring other anti-discrimination claims on behalf of the child. "Important as the IDEA is for children with disabilities, it is not the only federal statute protecting their interests." *Fry*, 580 U.S. at 159. The IDEA generally requires parents looking to vindicate their children's special-education rights under other federal statutes, such as the Americans with Disabilities Act and the Rehabilitation Act, to complete an IDEA due process hearing before bringing additional claims under those Acts as well. Unless they "exhaust[]" the due process hearing procedures "to the same extent" required under the IDEA, parents may not bring a lawsuit under *any* federal law seeking "relief that is also available under" the IDEA. 20 U.S.C. § 1415(*l*).

All of this means that a parent, generally speaking, may not sue a school district for special-education-related harms that focus on the denial of a free and appropriate education for a child until the parent has completed a due process hearing under the IDEA.

This general rule comes with a few exceptions. *First*, the exhaustion requirement applies to lawsuits brought under other federal statutes only if a parent seeks "relief that is also available under" the IDEA. *Id.* If a parent, for example, seeks a "form of relief" unavailable under the IDEA—say, compensatory damages—the parent need not complete a due process hearing before filing an action seeking that relief in federal court. *Luna Perez*, 598 U.S. at 147–48. *Second*, the IDEA exhaustion requirement applies only if the denial of a free and appropriate education lies at the heart of the case. If a parent, for example, files a lawsuit seeking relief under the IDEA, the ADA, and the Rehabilitation Act, she has to complete the administrative process in seeking relief under the ADA and the Rehabilitation Act only if the denial of a free accessible public education is "the crux" or "gravamen" of the parent's complaint. *Fry*, 580 U.S. at 169. *Third*, the parent need not complete the administrative process if the school district or State refuses to provide it. In that unusual setting, the statute would give parents the "right to bring a civil action" because they would be "aggrieved" by the refusal of the school district or State to create a hearing that generates "findings" and a "decision" about whether their child is receiving a free and appropriate education. 20 U.S.C. § 1415(i)(2)(A).

None of these exceptions applies to this case. No one claims that the school district refused to provide a due process hearing for the parents. The parents do not deny that the IDEA claim is the crux of this lawsuit. And the parents seek injunctive relief in this case, a form of relief that the IDEA provides.

The parents instead claim that a "systemic violations" exception applies to the IDEA's exhaustion requirement. Pointing to district-wide staffing and funding shortfalls, the parents allege that the district "systematically failed" to formulate or implement their children's individualized education programs. R.54 at 14. Because Hamtramck's "lack of staffing" and funding led to widespread violations of the IDEA that affected many eligible students across the district, the parents argue that they should not be required to complete a due process hearing

before this class action may proceed.  R.54 at 15.  Put another way, they claim that it would be "futile" to hold a due process hearing for each affected student.  R.54 at 20–21.

Nothing in the IDEA's text supports this sweeping "systemic violations" exception—or for that matter class action exception—to the due process hearing requirement.  Recall that the IDEA grants "the right to bring a civil action" only to those "aggrieved by the findings and decision made" by a due process hearing.  20 U.S.C. § 1415(i)(2)(A).  A parent cannot be "aggrieved by" an administrative "decision" if the parent never requested one in the first place.  Without the injury created by an unsuccessful (or unavailable) hearing, there is no right of action under the statute.  Allegations that a school district systemically violated the IDEA, serious as they doubtless may be, do not permit a claimant to displace the preconditions for creating the right of action.

The Supreme Court's careful attention to the existence of, and the scope of, rights of action over the last several decades buttresses the idea that we should not lightly create such a gaping exception to this explicit exhaustion requirement.  When Congress authorizes a "class of plaintiffs" to sue under a law, we respect the boundaries of the class.  *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 (2014).  "Just as a court cannot apply its independent policy judgment to recognize a cause of action that Congress has denied," *id.*, it may not erase limitations Congress has imposed on a right to sue.  *See Alexander v. Sandoval*, 532 U.S. 275, 286–87 (2001).  Just so here.  No right of action exists until an administrative hearing creates it—and in the process identifies the nature and scope of the disagreement between the school and the parents over how to provide a free and appropriate education to the child.

That Congress passed the IDEA under its spending power also suggests that judges should pause before creating such a widespread exception.  *See Fry*, 580 U.S. at 158.  Due to "the breadth" of Congress's spending power—a power to offer States federal money in return for federal regulations that may extend *beyond its enumerated powers*—the National Legislature "must speak unambiguously when it legislates through the spending power."  *Ali v. Adamson*, 132 F.4th 924, 930 (6th Cir. 2025) (quotation omitted); *see Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 295–96 (2006) (applying this clear-statement rule to the IDEA).  The IDEA does not include any language giving States "clear notice" of an unheralded "systemic

violations" exception, reinforcing the conviction that judges should not impose one themselves. *See Murphy*, 548 U.S. at 298.

It is not obvious, moreover, what perceived gaps in the IDEA a "systemic violations" exception would close and how such an exception would advance the goals of the Act. The statute awards attorney's fees to parents who prevail in "any action or proceeding brought under" the IDEA. 20 U.S.C. § 1415(i)(3)(B). Whether in small-scale or large-scale lawsuits, parents do not bear the cost of adjudicating meritorious claims under the due process hearing procedure. A "systemic violations" exception thus is not needed to ensure that parents can afford to vindicate the right of their child to a free and appropriate education.

A "systemic violations" exception also seems incompatible with the individual-centric nature of the statute. From every policy concept embraced in the statute to its title, the *Individuals* with Disabilities Education Act confirms that the administrative process channels *all* of the individualized inquiries necessary to provide a free and appropriate education to one student or to 500 students. How could the front-and-center imperative of an "individualized education program," 20 U.S.C. § 1414(d), require anything less? Take this case. Yes, a single staffing shortage caused by a funding cut may lead a school to violate three different individualized education programs. But each of those violations involves a different student with a different disability and different needs. One student, for instance, may require a full-time aide, while another may need regular sessions of speech therapy. Even if the same funding cut prevents both students from receiving the services they need, each of them benefits from a hearing designed to show how the school district must formulate and abide by each of their individualized education programs. *See id.* § 1415(f)(3)(E)(i).

A student-centered approach to fulfilling the statute's aims also does not work alone. A process that benefits one student will invariably benefit other students. If a school district prevails at the hearing and continues to underfund the needs of a given student, the parent may go to federal court. Because a school district facing systemic violations is not apt to do well in a federal court hearing with respect to that student, the parents are apt to obtain relief, including relief that may require the school district to devote more resources to the problem. That federal court decision not only will benefit the student in that case. It also may create a precedent the

school district must follow. And it likely will lead the district to devote more resources to other students who need additional support. Else, the district will eventually spend more money on attorney's fees (in a losing cause) than it would ever have to spend on appropriate "individualized education programs" (in a winning cause). In this way, each "individualized" due process hearing will "create spillover benefits" that lead to "a universally positive outcome" for other parents. *T.R. v. Sch. Dist. of Phila.*, 4 F.4th 179, 194 (3d Cir. 2021) (quotation omitted). Far from futile exercises, these due process hearings will determine whether each individual has an actual grievance (by identifying those individuals who succeed at the hearing), will clarify the terms of disagreement with respect to a given student (by identifying how the individualized education program has failed), will potentially create changes in policy (by leading the district to identify sufficient support for certain conditions), and will potentially create a federal court precedent for future disputes (by requiring the district to comply with a given application of the Act). That may not be all revenue and no cost from the perspective of an aggrieved family. But it is not remotely the opposite, and at all events it is the interpretation that honors the "individualized" nature of the right created by the IDEA.

We appreciate the instinct that the best way to address "systemic violations" is through a collective lawsuit rather than individualized due process hearings. But just as there is no "systemic violations" exception to the IDEA's procedural requirements, there is no "class action" exception to the statute either. The IDEA, it bears emphasizing, is particularly ill-suited for generalized treatment. Childhood disabilities contain as many variations as there are children in a school district. The IDEA "requires participating States to educate a wide spectrum of handicapped children, and the benefits obtainable by children at one end of the spectrum will differ dramatically from those obtainable by children at the other end, with infinite variations in between." *Endrew F. ex rel. Joseph F. v. Douglas Cnty. Sch. Dist. RE-1*, 580 U.S. 386, 400 (2017) (quotation omitted). Any lawsuit primarily focused on a school's failure to meet a student's "unique needs," *Fry*, 580 U.S. at 158 (quotation omitted), will inevitably involve "a factually intensive inquiry into the circumstances of [that] individual child's case," *McQueen ex rel. McQueen v. Col. Springs Sch. Dist. No. 11*, 488 F.3d 868, 875 (10th Cir. 2007) (quotation omitted). That explains why the IDEA does not grant parents the right to sue until they have completed a due process hearing, which will address a child's "individualized education

program," 20 U.S.C. § 1414(d)(2)(A), and the requirement of a "free and appropriate education" "tailored to meet a child's unique needs," *Fry*, 580 U.S. at 158 (quotation omitted).  *See* 20 U.S.C. § 1415(i)(2)(A).  Courts and litigants alike benefit when educational experts, rather than generalist judges, take the first pass at such intricate and sensitive inquiries.  Unwritten exceptions to the statutorily compelled due process hearing requirement not only would undermine the highly reticulated structure of the IDEA, but they also would deprive courts of valuable "expertise and judgment," potentially putting at risk the very point of an "individualized education program" and the best ways to meet it.  *Endrew F.*, 580 U.S. at 390–91, 404 (quotation omitted).

III.

The claimants resist this conclusion in several ways, each unavailing.  They point to *Honig v. Doe*, a Supreme Court case arising under an earlier federal statute that became the precursor to the IDEA.  484 U.S. 305 (1988).  At issue was whether "state or local school authorities" could "exclude disabled children from the classroom for dangerous or disruptive conduct" during the pendency of a due process hearing.  *Id.* at 308.  In the course of resolving the case, which had nothing to do with exhaustion, the Court said in dicta that "parents may bypass the administrative process where exhaustion would be futile or inadequate."  *Id.* at 327.  The Court did not apply a futility exception, much less explain how it would work or explain whether it had to be rooted in the statute or could be judicially created.  Proof that the Court has yet to permit the creation of a judge-made futility exception to the IDEA comes from the Court itself.  In *Luna Perez*, the Court declined to decide whether "a judge-made futility exception" to the IDEA's hearing requirement exists and, in the course of its analysis, never referred to *Honig* or to the precursor statute to the IDEA.  598 U.S. at 151.

The claimants separately rely on Sixth Circuit precedent saying that "[e]xhaustion is not required if it would be futile."  *Covington v. Knox Cnty. Sch. Sys.*, 205 F.3d 912, 917 (6th Cir. 2000); *see F.H. ex rel. Hall v. Memphis City Schs.*, 764 F.3d 638, 644 (6th Cir. 2014).  They argue that their proposed "systemic violations" exception is a close cousin to a "futility" exception and should be applied here.

Even if we accept for the sake of argument the existence of a "futility" exception (more on that later), we fail to see anything "futile" about a due process hearing in the context of these three children.  Imagine if one of today's parents prevailed in a due process hearing.  The hearing officer would award that parent complete relief, issuing findings and a decision requiring Hamtramck to formulate and comply with the student's individualized education program as required by the IDEA.  The parent would receive attorney's fees for their trouble.  20 U.S.C. § 1415(i)(3)(B)(i).  That the underlying violation resulted from systemic understaffing would not prevent the hearing officer from remedying the problem.  If Hamtramck pointed to staffing issues and refused to comply with the hearing officer's decision, the parent could press the issue in federal court, forcing Hamtramck to hire more staff to fulfill its legal obligations.  That outcome would lead to "spillover benefits" for all similarly situated students, as the school district would face stiff incentives to correct the same problem for other students.  *T.R.*, 4 F.4th at 194.

The parents worry about the efficiency of requiring such hearings for each of their three children and many others.  But that is not an argument about futility; it is a claim about difficulty in terms of time and energy.  The premises of the claim fail anyway.  By orienting IDEA cases around a student's appropriate "individualized education program," 20 U.S.C. § 1414(d)(1)(A), the hearing identifies the most efficient way to rectify a school district's IDEA violation.  If a parent later ends up in federal court, the hearing ensures that the court has a developed administrative record to inform its decision making.  Jumping straight to federal court undercuts those benefits, especially in a potential class-action lawsuit like this one that risks obscuring differences among the students' individualized needs.  Unfair generalizations about students with disabilities, it's well to remember, drove the effort to pass the Individuals with Disabilities Education Act in the first place.  *See Endrew F.*, 590 U.S. at 400.

If general allegations about futility or systemic violations, such as lack of staffing and resources, excused exhaustion, it would be the rare claimant who could not sidestep a due process hearing by reframing a claim as premised on a lack of resources or staffing.  In this setting, an unwritten exception would swallow the most elaborate of written exhaustion requirements.

None of our precedents, moreover, supports a "systemic violations" exception to the IDEA exhaustion requirement. We see no sound reason to be the first. While two of our cases apply a "futility" exception, they did not apply the exception to "systemic violations" or anything like them. *See Covington*, 205 F.3d at 917; *F.H.*, 764 F.3d at 644. Both cases, to their credit, anticipated what the United States Supreme Court later would hold—that a family does not need to exhaust administrative remedies for relief under the Americans with Disabilities Act or the Rehabilitation Act if the IDEA does not give that relief. *Covington*, 205 F.3d at 917; *F.H.*, 764 F.3d at 644; *see Luna Perez*, 598 U.S. at 147–48. But that is a statutory exception to exhaustion, not a judge-made "futility" or "systemic violations" exception to exhaustion.

The parents claim that other circuits have recognized a "systemic violations" exception to the IDEA's exhaustion requirement like the one they propose. That overstates matters, as a review of the cases confirms. No circuit, in reality, allows parents to sidestep the IDEA's exhaustion requirement based merely on allegations of systemic underfunding or understaffing.

The Ninth Circuit, for example, has mentioned the possibility of an exception for those who seek "systemic or structural relief." *Martinez v. Newsom*, 46 F.4th 965, 973–74 (9th Cir. 2022). But, over three decades, it has never applied the exception, what it calls "something of an enigma," in a published opinion. *Id.* at 974. It has repeatedly insisted that a parent may not trigger this still-hypothetical exception merely by demanding "increased funding and greater adherence to existing policies." *Id.* at 973 (quotation omitted); *accord Student A ex rel. Parent A v. S.F. Unified Sch. Dist.*, 9 F.4th 1079, 1085 (9th Cir. 2021) (quotation omitted). The exception would apply, the Ninth Circuit has explained, only in instances that "implicate[] the integrity or reliability of the IDEA dispute resolution procedures themselves, or require[] restructuring the education system itself in order to comply with the dictates of the Act." *Doe ex rel. Brokhuis v. Ariz. Dep't of Educ.*, 111 F.3d 678, 682 (9th Cir. 2021). That sounds a lot like our acknowledgement, noted above, that the school district or State may not deny a hearing process to parents without violating the statute. Also revealing is the Ninth Circuit's acknowledgement of when a systemic violations exception would not apply. Such an exception would never apply, it reasons, when "[a]n administrative record could shed needed light on what

is going right, what is going wrong, and remedies for the latter." *Student A*, 9 F.4th at 1085. That describes today's case to a tee.

Some Tenth Circuit cases also refer to the possibility of a "systemic violation" exception. *Ass'n for Cmty. Living in Colo. v. Romer*, 992 F.2d 1040, 1044 (10th Cir. 1993); *see Ellenberg v. N.M. Mil. Inst.*, 478 F.3d 1262, 1277 (10th Cir. 2007). Yet the Tenth Circuit, like the Ninth Circuit, has never applied this yet-to-be-pinned-down "dicta." *Jacobs v. Salt Lake City Sch. Dist.*, 154 F.4th 790, 798 (10th Cir. 2025).

The Fifth and Eighth Circuits tell a similar story. They mention the possibility of an exception in passing but have never applied it, and the Fifth Circuit decision is unpublished to boot. *See J.B. ex rel. Bailey v. Avilla R-XIII Sch. Dist.*, 721 F.3d 588, 594, 595–96 (8th Cir. 2013); *Papania-Jones v. Dupree*, 275 Fed. App'x 301, 304 (5th Cir. 2008).

Other courts limit a "systemic" exception to the statutory carveout we embrace. A school district, they say, may not sidestep its duties under the IDEA by denying parents a due process hearing at all. That exhaustion exception, we think, arises not from a free-flowing "systemic violations" exception to the exhaustion requirement; it arises from the reality that a district may not deny parents the due process "findings" and "decision" that create a "right to bring a civil action" in the first place. 20 U.S.C. § 1415(i)(2)(A). That is the rule of the Third Circuit, which like the Fifth, Eighth, Ninth, and Tenth Circuits has never applied its theoretical exception because no school district (apparently) has yet to deny such statutorily compelled hearings. *See T.R.*, 4 F.4th at 192 ("[T]he systemic exception to exhaustion is largely limited to those procedural violations that effectively deprive plaintiffs of an administrative forum.") (quotation omitted).

The First Circuit, for its part, has declined to decide whether a "systemic" "exception [is] available" in that circuit. *Roe v. Healey*, 78 F.4th 11, 26 (1st Cir. 2023); *accord Parent/Pro. Advoc. League v. City of Springfield*, 934 F.3d 13, 27–28 (1st Cir. 2019). Even if such an exception exists, the court explains, it would apply only when a violation "has the practical effect of denying the plaintiffs a forum for their grievances." *Roe*, 78 F.4th at 26 (quotation omitted). We agree.

That leaves the Second Circuit.  It has applied a "systemic violations" exception in the familiar setting mentioned above—when the school district or State effectively denies parents a hearing given the defective nature of the hearing process.  *See Heldman ex rel. T.H. v. Sobel*, 962 F.2d 148, 158–59 (2d Cir. 1992); *Mrs. W. v. Tirozzi*, 832 F.2d 748, 756 (2d Cir. 1987); *Z.Q. ex rel. G.J. v. N.Y. City Dep't of Educ.*, 2023 WL 1486387, at *3–4 (2d Cir. Feb. 3, 2023).  In addition, the Second Circuit, apparently unique among the circuits, has identified and applied a systemic violations exception in one other setting.  It excuses parents from complying with the exhaustion requirement when a school district or educational agency has implemented a district-wide or state-wide policy and individual fact-finding would not benefit the court's decision-making process.  *J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 114–15 (2d Cir. 2004); *J.M. v. N.Y. City Dep't of Educ.*, 161 F.4th 149, 159–60 (2d Cir. 2025); *B.C. v. Mt. Vernon Sch. Dist.*, 837 F.3d 152, 157 n.3 (2d Cir. 2016); *R.A.G. ex rel. R.B. v. Buffalo City Sch. Dist. Bd. of Educ.*, 569 Fed. App'x 41, 41–42 (2d Cir. 2014); *J.G. ex rel. Mrs. G.*, 830 F.2d 444, 446–47 (2d Cir. 1987).

While the Second Circuit seems to be the one circuit to apply a "systemic violations" exception beyond the denial of a full due process hearing, its carve out—for challenges to district-wide or state-wide policies that would not benefit from exhaustion—does not apply here. That is not the target of today's complaint.

Things do not improve for the claimants if we widen the lens to consider other circuits that have considered a "futility" exception without any invocation of "systemic violations." Those courts limit a "futility" exception to contexts in which a due process hearing's procedural rules make it impossible for a parent to receive meaningful relief.  *See, e.g.*, *K.I. v. Durham Pub. Schs. Bd. of Educ.*, 54 F.4th 779, 793 & n.8 (4th Cir. 2022); *Durbrow v. Cobb Cnty. Sch. Dist.*, 887 F.3d 1182, 1191–92 (11th Cir. 2018); *Loch v. Edwardsville Sch. Dist. No. 7*, 327 Fed. App'x 647, 650 (7th Cir. 2009) (citing *McCormick v. Waukegan Sch. Dist. No. 60*, 374 F.3d 564, 568–69 (7th Cir. 2004)).  And one of these circuits—the Fourth Circuit—has expressly refused to extend its "narrow" exception beyond those bounds, declining to adopt a broader "systemic violations" exception.  *D.C. ex rel. Chaplick v. Fairfax Cnty. Sch. Bd.*, 171 F.4th 255, 262–63 (4th Cir. 2026) (quotation omitted).

In the last analysis, neither the Second Circuit nor any other court of appeals has endorsed a "systemic violations" exception that would apply whenever parents allege district-wide funding or staffing shortages. These allegations, in short, would not proceed beyond the motion-to-dismiss stage in any circuit.

\*     \*     \*

At day's end, we resolve just what we must to decide this appeal. The IDEA simply does not recognize the parents' proposed "systematic violations" exception, or for that matter "futility" exception, with respect to challenges to the school district's alleged understaffing or underfunding.

Our previous decisions in *Covington* and *F.H.*, as explained, do not support the application of a "systemic violations" or "futility" exception here. *Covington*, 205 F.3d at 917; *F.H.*, 764 F.3d at 644. The precedential value of *Covington* and *F.H.* also remains unclear when it comes to any implied exception to the exhaustion requirement. *Covington* and *F.H.* held that individual parents seeking only money damages do not need to exhaust the administrative process. *Covington*, 205 F.3d at 917; *F.H.*, 764 F.3d at 644. That approach anticipated the result of the Supreme Court's decision in *Luna Perez* but not its reasoning. After *Luna Perez*, the IDEA's exhaustion requirement does not apply to lawsuits involving parents (like those in *Covington* and *F.H.*) who seek only money damages because the IDEA does not provide such "relief," not because a futility exception applies to the law. *Luna Perez*, 598 U.S. at 147–48; *Covington*, 205 F.3d at 917; *F.H.*, 764 F.3d at 644. That means the explanation for creating a "futility" exception in *Covington* and *F.H.* disappeared after *Luna Perez* because the IDEA's exhaustion requirement does not apply to such lawsuits.

We see no need to decide whether a "futility" or "systemic violations" exception might apply in some future case and different setting. What we can say is that the only one recognized in our circuit no longer applies. And the only ones narrowly acknowledged elsewhere would not apply in the context of alleged staffing and resource shortfalls.

On top of that, a word of judicial caution is in order for intrepid quests for new exhaustion exceptions. Anyone wishing to sidestep the IDEA's highly reticulated exhaustion

requirements on "futility" or "systemic violations" grounds in the future must come to grips with the reality that those requirements are what create the right of action and will have to explain why judges have the authority to add an unwritten exception. When Congress carefully designs intricate procedural mechanisms, judges should pause before crafting extratextual workarounds. That is particularly true of mandatory exhaustion requirements. As the Supreme Court recently emphasized, "mandatory exhaustion statutes" create "mandatory exhaustion regimes, foreclosing judicial discretion" to craft exceptions. *Ross v. Blake*, 578 U.S. 632, 639 (2016); *see United States v. Palomar-Santiago*, 593 U.S. 321, 326 (2021).

We reverse.

———————————

**CONCURRENCE**

———————————

RITZ, Circuit Judge, concurring in the judgment.  I agree with the majority that we should reverse in this case, but my reasoning differs slightly.

I.

In my view, we are bound by our case law stating that IDEA's exhaustion requirement does not apply if pursuing administrative remedies would be futile.  Our decision in *Covington v. Knox County School System*, 205 F.3d 912, 917 (6th Cir. 2000), made this explicit: "Exhaustion is not required if it would be futile or inadequate to protect the plaintiff's rights."  We reiterated and applied the same principle in *F.H. ex rel. Hall v. Memphis City Schools*, 764 F.3d 638, 644 (6th Cir. 2014), and other cases, *see F.C. v. Tennessee Department of Education*, 745 F. App'x 605, 608 (6th Cir. 2018); *W.R. v Ohio Health Department*, 651 F. App'x 514, 521 (6th Cir. 2016).

This exception to the exhaustion requirement stems from *Honig v. Doe*, 484 U.S. 305 (1988).  *See Covington*, 205 F.3d at 917 (citing *Honig*, 484 U.S. at 326-27).  In *Honig*, the Supreme Court (interpreting the precursor to the IDEA, the EHA) held that even if "judicial review" of these cases "is normally not available . . . until all administrative proceedings are completed," parents or schools "may bypass the administrative process where exhaustion would be futile or inadequate."  484 U.S. at 326-27.  The Court's interpretation of the exhaustion requirement tracked the statute's legislative history, which tells us that "exhaustion was not to be required in certain circumstances, including when . . . 'it would be futile to use the due process procedures.'"  *Luna Perez v. Sturgis Pub. Schs.*, 3 F.4th 236, 249 (6th Cir. 2021) (Stranch, J., dissenting) (quoting H.R. Rep. No. 99-296, at 7 (1985) (Conf. Rep.)), *rev'd*, 598 U.S. 142 (2023).  Indeed, the Court in *Honig* quoted the following remarks from the EHA's sponsor: "Exhaustion . . . should not be required . . . in cases where such exhaustion would be futile either as a legal or practical matter."  484 U.S. at 327 (quoting 121 Cong. Rec. S37416 (1975) (statement of Sen. Harrison Williams)).

True, our court cast doubt on the existence of a futility exception in our *Luna Perez* decision, where we stated in a footnote that "[a]ny futility exception to [20 U.S.C. §] 1415(l) recognized in *Covington* cannot survive." 3 F.4th at 243 n.* (citing *Ross v. Blake*, 578 U.S. 632, 639 (2016)). But it is unclear whether this language was essential to the holding in *Luna Perez*, especially considering we went on to assume that even if a general futility exception existed for IDEA claims, Luna Perez could not satisfy it. *Id.* at 243; *see Logan v. MGM Grand Detroit Casino*, 939 F.3d 824, 836 (6th Cir. 2019); *see also Freed v. Thomas,* 976 F.3d 729, 738-40 (6th Cir. 2020). More to the point, even if the *Luna Perez* footnote was binding at the time of that decision, the Supreme Court reversed us in that case. So, our 2021 *Luna Perez* decision no longer binds us. *See Gun Owners of Am., Inc. v. Garland*, 992 F.3d 446, 458 (6th Cir. 2021) (finding prior opinion of this court overruled on other grounds was "at most persuasive authority"), *rev'd en banc*, 19 F.4th 890 (6th Cir. 2021).

Notably, in reversing our decision, the Supreme Court in *Luna Perez* explicitly declined to reach the question of "whether IDEA's exhaustion requirement is susceptible to a judge-made futility exception." 598 U.S. at 151. That may not tell us much, but it certainly does not suggest that *Ross* or any other authority categorically foreclosed the existence of such an exception—one that had long been recognized by many circuits, including ours. *See also Luna Perez*, 3 F.4th at 253-54 (Stranch, J., dissenting).

The upshot of this sequence of events, as I see it, is that we remain bound by *Covington* and *F.H.*, which clearly held that a futility exception applies. The majority sees it differently, believing these cases' "precedential value . . . remains unclear." Maj. Op. at 16. The majority further reads these cases to set forth only a limited "statutory exception to exhaustion," later recognized by the Supreme Court in *Luna Perez*, for claims seeking only money damages. *Id.* at 13.

I am not convinced that the contours of the exception to the exhaustion requirement are so confined. For its part, the majority agrees there is a "statutory carveout" to the exhaustion requirement, which would apply in the "unusual setting" where the state or school district refuses to provide any administrative process at all. *Id.* at 7, 14. I agree that exhaustion would be excused as futile in such a scenario, but case law suggests the futility exception reaches farther.

For example, our cases contemplate that exhaustion is not required "when the plaintiff was not given full notice of his procedural rights under the IDEA," which makes sense. *F.C.*, 745 F. App'x at 608; *see Covington*, 205 F.3d at 917. It also makes sense, as many circuits have recognized, to excuse claims where the administrative hearing process is defective or "inadequate," *see Covington*, 205 F.3d at 917, in some way that "implicates the integrity or reliability of the IDEA dispute resolution procedures themselves," *Doe ex rel. Brokhuis v. Ariz. Dep't of Educ.*, 111 F.3d 678, 681-82 (9th Cir. 1997); *see also T.R. v. Sch. Dist. of Phila.*, 4 F.4th 179, 192 (3d Cir. 2021) (describing systemic exception for "procedural violations that effectively deprive plaintiffs of an administrative forum" (citation modified)); *J.B. ex rel. Bailey v. Avilla R-XIII Sch. Dist.*, 721 F.3d 588, 594 (8th Cir. 2013) ("Courts recognize only three exceptions to the exhaustion requirement, including futility, inability of the administrative remedies to provide adequate relief, and the establishment of an agency policy or practice of general applicability that is contrary to law." (citation omitted)); *Jacobs v. Salt Lake City Sch. Dist.*, 154 F.4th 790, 798 (10th Cir. 2025) (recognizing possibility of systemic claims that excuse exhaustion); *J.M. v. New York City Dep't of Educ.*, 161 F.4th 149, 155, 160 (2d Cir. 2025) (concluding "the purposes of [IDEA] exhaustion would not be served" where "an agency has adopted a policy or pursued a practice of general applicability that is contrary to the law" (citation omitted)). These situations implicate the concerns referenced in *Honig* and might, depending on the particular claims involved, justify bypassing the exhaustion requirement.

Besides, the majority's limited statutory carveout is hard to square with the rest of the majority's analysis of the statutory scheme, namely the conclusion that an IDEA right of action only exists "after the completion" of the administrative process. *See* Maj. Op. at 5-6. If an IDEA claim only exists after a party is "aggrieved by the findings and decision" rendered by the administrative process, how can one exist when there is no process, and thus no "findings and decision," at all? *Id.* The answer must be, as *Honig* and our binding case law has recognized, that IDEA contains a futility exception that applies not only when the relevant authority "refuses to provide" process, *id.* at 7, but also when the process is "inadequate," such that exhausting that process would be "futile," *Covington*, 205 F.3d at 917.

II.

All that said, for purposes of this case my disagreement with the majority is more theoretical than consequential. That is because I ultimately agree with the majority's conclusion that the particular "systemic violations" claimed by plaintiffs here do not excuse their failure to exhaust. Maj. Op. at 17. And, like the majority, *see id.*, I agree that this case does not require us to define with specificity the outer boundaries of the futility exception to IDEA's exhaustion requirement.

"The burden of demonstrating futility or inadequacy rests on the party seeking to bypass the administrative procedures." *Covington*, 205 F.3d at 917 (citing *Honig*, 484 U.S. at 327). And plaintiffs have not met that burden here. Their "systemic violations" claim, as the majority notes, rests on an allegation that the school system is underfunded and understaffed. Maj. Op. at 12-13, 17. But one could probably levy such an allegation against every public school system. Even under the most reasonably capacious exception to the exhaustion requirement, plaintiffs cannot establish futility simply by claiming the school system is understaffed or underfunded, or that due process hearings would be voluminous or repetitive. Nor have the plaintiffs in this case tied their allegations to a particular policy or decision of the local school district, the regional educational service agency, or the state, so as to demonstrate that individualized due process hearings would be pointless. *J.M.*, 161 F.4th at 154.

"Serious due process violations" can render exhaustion futile when they "have the practical effect of denying the plaintiffs a forum for their grievances." *Hoeft v. Tucson Unified Sch. Dist.*, 967 F.2d 1298, 1304 (9th Cir. 1992). But we have previously expressed "doubt that a plaintiff is exempt from the IDEA's exhaustion requirement just because he paints the allegations in his complaint as broadly applying to all students." *F.C.*, 745 F. App'x at 609 (citing *Hoeft*, 967 F.2d at 1305); *see also W.R.*, 651 F. App'x at 520-21 (holding that claims of "systemic violations" are subject to IDEA's exhaustion requirement). And here, "[t]he alleged violations do not rise to a truly systemic level in the sense that the IDEA's basic goals are threatened on a system-wide basis." *Hoeft*, 967 F.2d at 1305.

Accordingly, like the majority, I would reverse.  But because I have a slightly different take on the law governing IDEA's exhaustion requirement, I concur in the judgment only.